NATIONAL ZINC COMPANY, Inc., and
Hartford Insurance Company,
Petitioners,

v.

Nathaniel Franklin COMBS and State
Industrial Commission, Respondents.

No. 38474.

Supreme Court of Oklahoma.

Nov. 17, 1959.

Rehearing Denied Feb. 16, 1960.

Covington, Donovan & Gibbon, Tulsa, for petitioners.

Howard C. Triggs, Oklahoma City, Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for respondents.

JOHNSON, Justice.

On July 19, 1958, Nathaniel Franklin Combs, hereinafter called claimant, filed his first notice of injury and claim for compensation stating that on November 8, 1957, while employed by National Zinc Company he sustained an accidental injury to his back. The trial judge entered an award for temporary total disability, and this proceeding is brought by the employer and its insurance carrier, Hartford Insurance

Company, hereinafter referred to as petitioners, to review the award. The award in part is as follows:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above named respondent, within the terms and meaning of the Workmen's Compensation Law, on November 8, 1957, consisting of injury to his back; that claimant immediately thereafter orally notified his foreman of said injury and respondent thereby having actual notice of said injury was not prejudiced by claimant's failure to give written notice as required by law, and his failure to give such written notice should be excused.

"That at the time of said injury, claimant's wages were sufficient to fix his rate of compensation TTD at $35.00 per week. That claimant continued to work until in May, 1958, but as a result of said injury, claimant has been temporarily totally disabled from May 28, 1958, and is still temporarily totally disabled and in need of further medical treatment, care, and attention, and is entitled to compensation for temporary total disability to be paid as follows: Compensation at the rate of $35.00 per week from May 28, 1958, to date, and to continue for and during claimant's period of temporary total disability, not to exceed 300 weeks, or until further order of this Commission; that claimant is entitled to be furnished such medical attention as may be necessary for correction of his condition due to said injury, at the hands of a competent physician to be selected by respondent or insurance carrier.

"It Is Therefore Ordered that respondent or insurance carrier pay to claimant the compensation for temporary total disability which has accrued from May 28, 1958, to date, in the amount of $641.67, and continue the payment of compensation to claimant at the rate of $35.00 per week, for and during claimant's period of temporary total disability, not to exceed 300 weeks or until further order of this Commission, and that respondent or insurance carrier furnish claimant such medical treatment as may be necessary for correction of his condition due to said injury by a competent physician, same to be selected by respondent or insurance carrier."

Claimant testified that on November 8, 1957, he was removing a pipe flange when a wrench slipped off hitting him in the mouth and throwing him backward wrenching his back, loosening his teeth and cutting his lip. The accident occurred at approximately 6:30 in the afternoon, and he worked until midnight that night. He hold his foreman of the accidental injury, and the foreman told him to go to the doctor. He was operated July 2, 1958, for a disc injury.

There is sufficient evidence to support the finding of temporary total disability and that claimant is in need of medical care.

Dr. B filed a report for claimant. He stated he first saw claimant in his office on June 25, 1958; that claimant was unable to recall any specific injury but stated that during the last three months or more he had suffered with low back pain. He visited a physician at Dewey two months before the report of Dr. B September 21, 1958, and also saw Dr. A who hospitalized him for traction from May 28th to June 4, 1958. Dr. B performed a laminectomy on July 2, 1958. His statement thereon is as follows:

"It was my impression that this patient had a herniated nucleus pulposis at the L–4, and I admitted him to the Washington County Memorial Hospital for a myelogram and further treatment. The myelogram revealed an hourglass defect at the L–4 interspace with bilateral and anterior compression of the neural canal.

"I did a laminectomy on Mr. Combs on 7–2–58 and found posterior ridging at the L–4 interspace with posterior protrusion of the L–4 disc. The ridging at L–4 was removed as was the disc

and a fusion of L–4 to L–5 to sacrum was done. The patient experienced relief of his leg pain and his postoperative course was uneventful. He was fitted with a chairback brace and at the time of his discharge from the hospital on 7–18–58, he was free of leg pain and walked erect without list or limp. He has been followed at intervals in the office and to date his progress has been excellent. He will be unable to resume heavy manual labor until such time as the fusion has become solid, which should occur within the next four months. It is too early to make a disability evaluation at this time but in my opinion his prognosis is excellent."

Claimant also offered a statement from Dr. V which is as follows:

"to whom it may concern: This is to advise that I examined Frank Combs on May 2nd and 12th, 1958, and found him suffering from a possible back strain, lumbar region."

This offer was objected to, and the trial judge sustained the objection.

■ The sole issue presented by petitioners is that there is no competent evidence to support the finding that the disability is due to an accidental injury.

Claimant argues that the statement of Dr. V was accepted and commented on and should therefore be considered. We find it unnecessary to determine this issue. There is nothing either in the report of Dr. B or Dr. V to indicate that it is their opinion that the accidental injury of November 8, 1957, or any other accidental injury arising out of and in the course of the employment caused the disability.

■ In De Shazer v. Nail, 207 Okl. 446, 250 P.2d 456, 457, it is stated:

"Where in a proceeding before the State Industrial Commission, the disability alleged to exist is of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proved by the testimony of skilled professional persons.

"When medical expert testimony is essential to establish that the disability is a result of an accidental injury, an award of the State Industrial Commission which is not supported by competent medical testimony sufficient to establish as a fact that the disability resulted from an accidental injury will be vacated."

See also Western Good Roads Service Co. v. Coombes, 185 Okl. 599, 95 P.2d 633.

Claimant cites M. B. K. Drilling Co. v. Malaski, 197 Okl. 318, 170 P.2d 245; Pittsburgh Plate Glass Co. v. Wade, 197 Okl. 681, 174 P.2d 378; Dierks Lumber & Coal Co. v. Lake, 200 Okl. 115, 190 P.2d 1006; and Aggas Drilling Co. v. Williams, 200 Okl. 277, 192 P.2d 995. In each of these cases a medical expert witness gave a history of the case and stated that the disability was due to an accidental injury. In Pittsburgh Plate Glass Co. v. Wade, supra, the medical expert witness gave a detailed history of the case and stated specifically that the claimant had a 50 percent permanent disability due to the accidental injury. Neither doctor for the claimant herein gave any history of the case or indicated the cause of the disability. There is no competent evidence reasonably tending to support the finding of the State Industrial Commission that the disability is due to an accidental injury. However, as suggested in De Shazer v. Nail, supra, we are of the opinion that claimant should have an opportunity to offer further testimony on this question.

■ There is another matter presented which we presume will be corrected on further proceedings. The award commences May 28, 1958, and it appears that claimant was being paid by the employer and was working at this time as he testified that he quit work June 25, 1958. The claimant cannot draw compensation for temporary total disability during the time he is employed and being paid. Therefore, the State Industrial Commission should fix

a date subsequent to the time claimant quit work to start any award for temporary total disability.

The award is vacated and the cause remanded to the State Industrial Commission for further proceedings in accordance with the views herein expressed.