**W. W. GLASPEY and Pacific Indemnity Company, Petitioners,**

v.

**Neavene A. DICKERSON and the State Industrial Court, Respondents.**

No. 38791.

Supreme Court of Oklahoma.

March 22, 1960.

Looney, Watts, Looney & Nichols, Oklahoma City, for petitioners.

Rainey & Barksdale, Okmulgee, Mac Q. Williamson, Atty. Gen., for respondents.

JACKSON, Justice.

This is an action by W. W. Glaspey, employer, and his insurance carrier for review of an order of the State Industrial Court awarding claimant, Neavene A. Dickerson, death benefits under the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq., arising out of the death of her husband, Robert Omer Dickerson, as the result of a heart attack found to have occurred on July 28, 1958.

Employer contends that the medical evidence is insufficient to sustain the award, and was based on a hypothetical question incorporating facts not supported by evidence, and that the trial commissioner erred in admitting certain testimony of claimant as to the physical appearance and condition of her husband when he returned home from work on July 25, 1958.

The deceased was a carpenter foreman, engaged in the construction of a dwelling in the city of Okmulgee. On Friday, July 25, 1958, he worked for twenty or thirty minutes on the roof of the house, nailing shiplap to the rafters. Two employees didn't notice anything unusual about his appearance or actions during the day, or at 4:30 when he gave them their pay checks. One employee, McAdoo, expressly stated that the deceased's lips were not blue, his face was not ashen, he evidenced no pain, and did not appear to be ill. On the following Monday, July 28, deceased did not work on the roof. He had been installing a metal door frame, and was next seen by another employee sitting on a pile of lumber. He was white and pale, and had vomited in the garage. About 3:15 p. m. on said day, he got in his truck and went home, and telephoned claimant at her place of work, stating that he was home sick and

unable to come to the doctor's office. Claimant went to the doctor's office and she and the doctor went home in separate cars. On arrival, they found the deceased lying in bed, rubbing his chest. He was very pale and quiet. He told the doctor that his chest and arms were hurting very bad. The doctor examined him and gave him a shot, then left. He died about 4:00 p. m. before the doctor arrived back at the home.

The testimony of claimant which was objected to by employer and admitted by the trial commissioner consisted of her impressions or observations as to the physical condition or appearance of the deceased after he returned home from work on July 25. She stated that his lips looked blue, that he looked like he had been cooked all day; he was kind of pale and tired; that he complained of being very hot at the shop and said that he couldn't breathe, and that his shoulders were aching; that he just sat around on Saturday and Sunday, and complained that he was hurting and felt that he couldn't breathe; that on Monday morning, July 28, he went to work.

 As a general rule, testimony of a witness as to statements of an employee as to the cause or circumstances of his injury or disability are inadmissible as hearsay. 100 C.J.S. Workmen's Compensation § 534, p. 531. But where such testimony relates statements of the employee indicating pain or suffering, or describes his physical appearance, such testimony is admissible under a recognized exception to the hearsay rule. In Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159, 160, we held in paragraph two of the syllabus:

"It is a well-settled general rule that, where the bodily or mental feelings of a person are to be proved, the usual and natural expressions and exclamations of such person which are the spontaneous manifestations of pain, and naturally flow from the pain being suffered by him at the time, are competent and original evidence, which may be testified to by any party in whose presence they are uttered."

Therein we approved testimony by the widow that upon arrival at home following the injury, the deceased "looked pitiful. He was pale and very sick." See also Dewitt v. Johnson, 170 Okl. 625, 41 P.2d 476, 477.

 We are therefore of the opinion that the trial commissioner did not err in admitting claimant's testimony.

The hypothetical question complained of by petitioner was, as follows:

"Q. Now, Doctor, we are taking this testimony kind of piece-meal and by deposition. Assume that the testimony of other witnesses shows, or will show, that on the 25th day of July, Omer was working on the roof of a house; *that while so working he became ill, blue around the lips and ashen colored, complained of chest pain and difficulty in breathing.* Assume that the place where he was working was a place that was sort of a hollow place on a roof, with the air circulation from the east, the west and the south cut off by roof ridges; that the day was extremely hot and humid; that his condition became such that he quit work and got off the roof; stayed on the job until quitting time; went home, went out intending to visit friends that evening and was feeling so bad that he returned to his home; was very quiet and didn't feel well over the weekend; that is, Saturday and Sunday; and then on a Monday he returned to work, became ill and vomited and returned to his home and then his death followed; that on this particular roof job they were attempting to complete the sheeting of the roof or the roofing of it, I am not certain which, that particular afternoon, and *they were working faster than usual in the heat and humidity.* Would you have an idea Doctor, and would you have an opinion as to what the precipitating cause of Mr. Dickerson's attack was from the state of facts if so proven?" (Emphasis supplied.)

A perusal of the entire record reveals that the assumed facts emphasized above were not supplied by evidence and were expressly negatived by testimony of deceased's coemployees. The testimony of claimant hereinbefore summarized relative to deceased's condition after he returned home from work, was not probative of his appearance and complaints while working.

The doctor stated in effect on cross-examination, if deceased did not have the symptoms while working on July 25, as assumed in the hypothetical question, then he would assume his initial attack was on the 28th of July.

■ We, therefore, agree with petitioner's contention that the hypothetical question assumed facts not supplied by evidence, and that the doctor's testimony relating to July 25th was incompetent. Fidelity-Phenix Fire Ins. Co. of New York v. Board of Education, 201 Okl. 250, 204 P.2d 982; Goodlett v. Williamston, 179 Okl. 238, 65 P.2d 472.

■ In any event, claimant's counsel states in the brief that the doctor's testimony relating to July 25th is irrelevant, and we agree. At page 15 of claimant's brief, it is stated: "The Trial Court found the coronary thrombosis to have occurred and culminated in death all on July 28. Therefore, we shall not belabor the significance of occurrences on July 25—they are unimportant in the light of the Industrial Court Finding."

Dr. A., whose testimony constituted the only medical evidence in the record, stated that he had known and treated the deceased for many years, and that there was no previous history of a heart condition until July 6, 1958. On that date, deceased complained of pain in his chest and upper abdomen, which was not a definite cardiac symptom. The next day, he administered an electrocardiogram, which showed an impaired heart. He next saw the deceased on July 28, the day of his death.

Omitting all testimony relative to July 25th, which we have seen was incompetent,

irrelevant and immaterial, the doctor's pertinent testimony was, as follows:

"Q. I will direct your attention to the 28th day of July, 1958, and ask you if you had occasion to see him on that day? A. I did.

"Q. Will you describe the circumstances surrounding this professional interview that you had with him at that time, or examination or whatever it may have been? A. Beginning around three o'clock, the—his wife came to my office and said he was at home from work and she wanted me to come and see him; she and I went out to the house and he was in bed complaining of substernal pain and pain radiating down his left arm; I checked him over, checked his blood pressure and his heart and I gave him some nitrate—some paritrate and some nitroglycerin both. I also gave him a quarter of morphine. In a few minutes, it wasn't very long, ten or fifteen minutes it seemed like, his pain subsided. I left and came back to the office, but about four or four thirty she called me to come back out there, or the operator called me and I went back out there and he had expired.

\* \* \* \* \* \*

"Q. Doctor, do you have an opinion as to what the cause of death was? A. I think the cause of death was a coronary thrombosis.

\* \* \* \* \* \*

"A. He probably suffered the coronary thrombosis when he had the initial set of symptoms. That would be my estimate of the time of when he started it. Now, whether he was at home or at work I don't know. I mean it's possible to have one of these sitting right here, but from the facts here I believe his symptoms began or the instance of the coronary thrombosis began the day his symptoms began with his pain and vomiting and probably shock-like condition that he was in at work.

\* \* \*. \* \* \*

"A. As far as I actually know he suffered—he had these symptoms on the 28th. As far as I actually know— I mean that's as far as I can actually testify to.

\* \* \* \* \* \*

"A. Without having any symptoms in reference to the hypothetical question, I would assume his initial attack was on the 28th of July.

"Q. Doctor, when you examined Mr. Dickerson on the 28th, could you tell how long he had been suffering symptoms of coronary thrombosis? A. No sir. Excepting from the history he gave me he said he got to feeling bad with pain in his chest around two o'clock and came home.

\* \* \* \* \* \*

"Q. On the 28th, Doctor, when you talked to Mr. Dickerson, before you administer medication of this type, don't you try to get a history of what pains the man had suffered and what his symptoms had been and how long he had had these symptoms? A. Yes, sir.

"Q. And you attempted to get the symptoms from Mr. Dickerson as to what his symptoms were and if he had any pain and how long he had it? A. Yes.

"Q. And the only symptoms he mentioned to you was the day of his death? A. Yes."

The order recited that:

"On July 28, 1958, Robert Omer Dickerson was in the employ of respondent, engaged in a hazardous occupation within the meaning of the Workmen's Compensation Law, on which date he sustained an accidental injury, arising out of and in the course of his employment *by reason of strain and exertion,* aggravating and accelerating a previous impaired heart condition from which he suffered a coronary thrombosis, which resulted in his death on said date." (Emphasis added.)

■■ We are of the opinion that, although the medical evidence is sufficient to show that the deceased sustained a heart attack while engaged in the duties of his employment on July 28, 1958, which resulted in his death, it is insufficient to show that it was caused "by reason of strain and exertion" in the scope of his employment. It is not enough to show that a workman sustained a heart attack while performing duties of his employment. Ware v. Wilson & Co., Okl., 322 P.2d 204. It is necessary to further show that the heart attack was caused by strain or exertion arising out of or in the scope of his employment. Charles Banfield Co. v. State Industrial Comm., Okl., 309 P.2d 274; Collins-Dietz-Morris Co. v. Richardson, Okl., 307 P.2d 159; Reints v. Diehl, Okl., 303 P.2d 641; Baker v. Harris, Okl., 302 P.2d 129; Merrill v. State Industrial Comm., Okl., 290 P.2d 1095.

■ Excluding from consideration Doctor A's testimony relating to July 25th, there is an entire absence of medical evidence to support the finding that the deceased sustained a heart attack on July 28, 1958, by reason of strain and exertion in the scope of his employment. So far as the record shows, the doctor did not *know* what work the deceased performed on July 28, and he expressed no opinion as to the cause of the deceased's heart attack on that date.

■ When a disability for which compensation is sought is of such character as to require a determination of its nature, cause and extent by skilled and professional persons, proof thereof must be made by the evidence of such persons, and in the absence of such evidence on which to base an award, the award will be vacated. Armour & Co. v. Worden, 189 Okl. 106, 114 P.2d 173.

Order and award vacated and case remanded, without prejudice to further proceedings in accordance with the views ex-

pressed herein. DeShazer v. Nail, 207 Okl. 446, 250 P.2d 456; Fournier Stucco & Plastering Co. v. Greer, 187 Okl. 589, 104 P.2d 423.

WILLIAMS, V. C. J., and HALLEY, IRWIN and BERRY, JJ., concur.

JOHNSON and BLACKBIRD, JJ., dissent.