CHIEF FREIGHT LINES, INC., a Corporation, and Transport Insurance Company, a Corporation, Petitioners,

v.

Floyd C. RINES and State Industrial Court, Respondents.

No. 40659.

Supreme Court of Oklahoma.

July 14, 1964.

Rehearing Denied and Opinion Corrected Sept. 22, 1964.

Application for Leave to File Second Petition for Rehearing and Motion to Recall Mandate Denied Oct. 20, 1964.

Ross, Holtzendorff & Hurd, and Jay R. Bond, Oklahoma City, for petitioners.

Lampkin, Wolfe & Blankenship, Jerry D. Sokolosky and Ben T. Lampkin, Jr., Oklahoma City, for respondents.

IRWIN, Justice.

Floyd R. Rines, referred to as claimant, filed his claim for compensation against Chief Freight Lines, claimant's employer, and Transport Insurance Company, the employer's insurance carrier, for injuries sustained as a result of an alleged accidental injury arising out of and in the course of his employment on January 21, 1963. In claimant's amended claim relating to the cause of the accident it is stated: "claimant was working on a semi-trailer truck while the fumes from an adjacent tractor blew in his face, causing claimant to cough which in turn caused a blood vessel in claimant's head to rupture."

The State Industrial Court found that claimant sustained an accidental injury, arising out of and in the course of his hazardous employment, and entered an award in favor of the claimant. Claimant's employer, and employer's insurance carrier, referred to as petitioners, filed their Petition for Review in this Court.

Petitioners challenge the order of the State Industrial Court on the basis that claimant failed to sustain the burden of proof that he sustained an accidental personal injury arising out of his employment.

## FACTS

The evidence discloses that claimant was employed as a truck driver and his duties consisted of delivering freight to consignees and performing such other duties around the loading dock that his foreman might designate. On the morning claimant sustained his disability he had been instructed by his foreman to hook a truck-tractor onto a loaded trailer and deliver the contents thereof to a named consignee. Claimant backed the truck-tractor under the trailer and left the motor running; he then started to crank the dolly in order to put the trailer in a proper position to attach it to the truck-tractor.

Claimant testified that he got a "whiff" of the gasoline fumes from the idling truck-tractor while he was cranking down the dolly and that it made him cough; that

he became dizzy and got a severe headache; that he quit cranking the dolly, braced himself between the tractor and the trailer until the dizziness subsided and then started walking toward the loading dock. Claimant testified that the threads on the dolly were rusty and icy and that it was very hard to crank.

The evidence discloses that claimant collapsed before reaching the loading dock and regained consciousness after he was placed in a hospital.

A report of Dr. R, a neurological surgeon who performed the operation on claimant, was submitted in evidence. This report stated:

"I re-examined this patient in the office on May. 8, 1963. The patient was brought into my office in a wheel chair by his wife. On questioning him about the onset of his illness, he stated that he had just hooked his trailer onto his truck and was rolling the dolly up. He states that he had been coughing and then after this, he had a severe headache and had difficulty in moving. He states that shortly after this, some people came and helped him and he was taken to the hospital.

"* * *

"*Impression:* It is my impression that this patient sustained a subarachnoid hemorrhage while working for the Chief Freight Lines on January 21, 1963. *This hemorrhage was on the basis of an abnormality in the right internal carotid artery.* At the present time, the patient has mental *impariment* and has a severe paralysis of the left side with pain in the left upper extremity. It is my opinion that this patient does need physical therapy. He still should improve, but he is going to have a great deal of permanent disability." (emphasis ours).

The above report contained no statements concerning claimant's operation or information obtained by Dr. R, in performing the operation.

A second report of Dr. R, stated:

"It is my opinion that Mr. Floyd C. Rines is temporarily totally disabled as a result of his accident on January 21, 1963."

Petitioners submitted the medical report of Dr. C, wherein it is stated:

"He was well until January 21, 1963. He left for work about 6:40 A.M. and arrived about 7:00 A.M. He worked on the dock for about thirty minutes and then he got a tractor and backed it under a trailer. He started cranking up the dollies to engage the two and while doing so, he started coughing so he went around to turn off the motor of the tractor. He, at this time, developed severe headache. He turned around and started back to the dock but he made it only about half the distance when he apparently collapsed. He was taken to St. Anthony Hospital where he was under the care of Dr. D * * * and Dr. R * * *. A lumbar puncture revealed the presence of bloody spinal fluid and on January 22, 1963 an arteriogram was performed and this revealed the presence of an aneurysm. * * *.

"* * * He states that he had been cranking up dollies, such as he was doing on the day of the accident, since at least 1951. He states that the ones he was cranking on the day in question he encountered no more difficulty in cranking than any he had previously used.

"* * *.

"The patient is suffering from a severe residual left hemiplegia secondary to bleeding that occurred following the rupture of a congenital aneurysm. There is actually no evidence from the story, however, that he was exerting himself unusually at the time this event occurred. He also has in addition to this complication of a left hemiplegia from a ruptured congenital aneurysm, a hereditary condition of Charcot-Marie-Tooth disease or neuromuscular

atrophy with deformity of his feet. It is also interesting that he has arcus senillis at the relatively early age of 42 years.

"In summary, *he is totally disabled from a cerebral vascular accident that was due to a congenitally weak blood vessel that ruptured while he was working.* The story does not indicate, however, that he was working in a more strenuous fashion than was his usual manner." (emphasis ours).

## CONCLUSIONS

■ Claimant's claim is predicated on the rupture of a blood vessel in his head and the medical reports submitted by claimant and petitioners support claimant's claim that this was the cause of his disability.

In National Zinc Company v. Combs, Okl., 349 P.2d 641, we held:

"Where in a proceeding before the State Industrial Commission, the disability alleged to exist is of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proved by the testimony of skilled professional persons."

See also Texas Co. v. Fox, 179 Okl. 528, 66 .P.2d 908, and De Shazer v. Nail, 207 Okl. 446, 250 P.2d 456.

■ It necessarily follows that before claimant would be entitled to compensation, he must prove the cause and the extent of his disability by medical evidence. In the instant action, the extent of claimant's disability is not an issue, but only the cause, i. e., what caused the blood vessel to rupture. If there is any competent medical evidence tending to support the finding of the State Industrial Court that it was a result of his employment, the order of the State Industrial Court should be affirmed. See Baker v. McMichael Sand Company, Okl., 357 P.2d 958. However, if there is no competent medical expert evidence to support the finding that the disability was a result of his employment, the award must

be vacated. See National Zinc Company v. Combs, supra.

In examining the medical reports, we find that Dr. C, stated claimant is "totally disabled from a cerebral vascular accident that was due to a congenitally weak blood vessel that ruptured while he was working." Nowhere in this report does the doctor suggest or express an opinion that the rupture was connected with or a result of claimant's employment.

In the medical report of Dr. R, submitted by claimant, it is stated that claimant's "hemorrhage was on the basis of an abnormality in the right carotid artery." Dr. R, in his report, does not suggest or express an opinion that the hemorrhage was connected with or a result of claimant's employment. However, in a subsequent report, Dr. R, states, "It is my opinion that Mr. Floyd C. Rines *is temporarily totally disabled as a result of his accident on January 21, 1963."* (emphasis ours).

It is to be noted that Dr. C, refers to the "day of the accident" and "a cerebral vascular accident". It is clear that the word "accident" as used by Dr. C, has reference to the rupture of the blood vessel and not the cause of the rupture. In his opinion the rupture was "due to a congentially weak blood vessel."

It is also equally clear that when Dr. R, expressed his opinion that claimant was disabled "as a result of his accident", he was referring to the rupture of the blood vessel and not the cause of the rupture. In our opinion, Dr. R's statement meant that claimant was disabled "as a result of the hemorrhage or rupture of a blood vessel." If we construed his statement to mean that claimant was disabled "as a result of a hemorrhage or rupture of a blood vessel caused by or a result of his employment", such construction would be in conflict with his first report wherein he stated, "This hemorrhage was on the basis of an abnormality in the right internal carotid artery."

■ We can only conclude that there is no competent evidence reasonably tending

to support the finding of the State Industrial Court that claimant's disability is a result of or was caused by his employment. Under such circumstances, the order of the State Industrial Court must be vacated. See National Zinc Company v. Combs, Okl., 349 P.2d 641.

Order vacated without prejudice to further proceedings. Fournier Stucco & Plastering Co. v. Greer, 187 Okl. 589, 104 P.2d 423.

BLACKBIRD, C. J., HALLEY, V. C. J., and WILLIAMS, JACKSON and BERRY, JJ., concur.

DAVISON and JOHNSON, JJ., dissent.