CITY OF TULSA, a municipal corporation, self-insured as Own Risk, Petitioner,

v.

STATE INDUSTRIAL COURT and Felix Vern Barton, Respondents.

No. 42117.

Supreme Court of Oklahoma.

Sept. 12, 1967.

**204**

Charles E. Norman, City Atty., Dewey Stark, William M. Northcutt, Waldo Bales, Asst. City Attys., Tulsa, for petitioner.

Mildred Brooks Fitch, Deryl L. Gotcher, Tulsa, Charles Nesbitt, Atty. Gen., for respondents.

LAVENDER, Justice.

This is a workman's compensation case involving a claim for permanent and total disability resulting from a heart attack.

The claimant was awarded compensation for permanent, total disability by the trial court, and on appeal to the State Industrial Court en banc the award was affirmed. The matter has been brought here for review. Parties will be referred to by their trial court designations.

Respondent presents two propositions, either of which it contends requires this court to vacate the award. These are:

"1. The testimony of an expert witness based upon an incomplete and inaccurate history has no probative value. and,

"2. An order of the State Industrial Court relating a myocardial infarction causally to working conditions one week previously should be vacated as being too remote in time and therefore as contrary to the best legal and medical authorities."

We are of the opinion that under the circumstances of this matter neither of respondent's propositions is well taken.

Before stating our reasons for so holding, we deem it necessary to briefly allude to the evidence which appears in the record.

On January 31, 1965 and February 6, 1965, the dates upon which certain alleged incidents occurred which give rise to this matter, the claimant, Felix Vern Barton, was employed by the City of Tulsa as a district fire chief.

On the first date mentioned a tragic apartment house fire occurred in Tulsa, the "London fire," in which some people lost their lives. The weather was cold, the wind was blowing from the north, and snow was falling occasionally. The claimant was in charge of a fire-fighting unit assigned to the south end of the building. The responsibility of claimant's unit was to try to prevent the spreading of the fire. This was obviously a severe fire, and because of a fence around the apartments, a shortage of man-power, the extreme cold, and the fact that loss of life occurred, claimant's responsibility was very great. Added to the mental stress, it was necessary that claimant exert himself physically by assisting his men to pull or carry a fully charged fire hose into the proximity of the burning area, a function which as chief he was not ordinarily called upon to do.

Before the conclusion of the fire, claimant became ill and was sent back to the station by his commanding officer. Various witnesses testified that from their observation of the claimant at that time he appeared pale. In the words of one witness, "He looked sick * * *." Claimant complained to the other firemen that he felt bad. The claimant testified that after he had assisted with the hose "at least three times" he "felt a tiredness and tightness in (his) chest and heaviness in (his) arms * * *"; that back at the station a few minutes later he again experienced the "heaviness" in his chest and arms. That claimant did not work the next two shifts because he did not feel "like it." That during this period he experienced nausea and a recurrence of the same pains he had suffered on the night of the fire. At 2:00 a. m. on February 6, 1965, while the claimant was at home asleep, he suffered what he described as "terrible pain" in his chest and shoulders, down his

arms and into his hands. He was taken by ambulance to a hospital, and an electrocardiogram was taken, the results of which indicated claimant had suffered a disabling injury to his heart.

We note at this point that there seems to be no controversy but that claimant, as a result of his heart condition, is permanently and totally disabled from performing ordinary manual labor, including the labor required of him as a fireman.

Expanding somewhat on respondent's first proposition as we understand it, respondent contends that the medical witness, Dr. A., when he testified that claimant's present disability was at least partly the result of claimant's labors at the "London fire," did not have a complete and accurate history upon which to base such opinion. Specifically, respondent contends the medical witness did not know of the claimant assisting with the hose, did not know how long claimant had worked at the fire, nor what the weather conditions were at that time and place.

Respondent says then, in effect, that there was not included in the history upon which the doctor based his opinion any evidence of the claimant having suffered an antecedent strain or exertion in the performance of his work which could be (and was by the doctor) assigned as contributing to claimant's heart attack and present disability.

■ We are cited to Acme Flour Mills v. Bray (1939), 185 Okl. 516, 94 P.2d 828; Western Good Roads Service Co. v. Coombes (1939), 185 Okl. 599, 95 P.2d 633; and Snow v. Kinta Stripping Company, Okl. (1962), 372 P.2d 34. The most recent of the cited cases, quoting and relying as precedent on the other two cases, contains the following expression:

> " * * * where it is necessary to establish disability by medical testimony, the physician's opinion must be predicated upon a set of facts substantially in the nature disclosed by the evidence on the hearing."

In Snow v. Kinta, supra, claimant had lost an eye. The Industrial Court denied an award upon medical testimony which in turn was based on a history which did not include a consideration of the fact the claimant received a steel sliver in the affected eye while on the job. We held that the rule cuts both ways, and if an award is denied upon such faulty medical evidence such order will be vacated by this court as readily as would an award granting compensation if the latter was based on medical testimony relying on a substantially incomplete history.

In Acme Flour Mills v. Bray, supra, the claimant, who was asserting a claim for injury to his groin which required an operation and which allegedly resulted in permanent disability, failed to mention to his physician—witness that claimant had suffered a veneral disease. The award was vacated. We held the history was not substantially complete.

In Western Good Roads Service Co. v. Coombes, supra, the injury was a torn ligament in claimant's knee. The examining physician and witness for the claimant testified that the history given him by the claimant was that the latter injured his knee when he was "climbing up and down." The evidence showed that the claimant at the time of his alleged injury was simply kneeling down on one knee to attach the bottom of a sign to a nail, and when he tried to get up he could not. The examining physician admitted on cross-examination that the act described by the claimant in his testimony before the Industrial Court did not cause the injury, and that in all probability he was injured at some other time.

After carefully reviewing the record, we note that while Dr. A's notes may have been a little sketchy he was testifying also from memory concerning his understanding of the strain and stresses which the claimant was undergoing on the night of the London fire. For example, he was asked:

"Q. * * * Would the mental strain of supervision of an unusual fire where

there was lots of responsibility, would that be considered mental strain that might cause his disability?

"A. That's right.

\* \* \* \* \* \*

"Q. Based on the history that this man had heavy responsibility, unusual exertion, strain, and worry at this fire about people being burned up in this apartment house. Might not that cause mental strain or emotional strain that could lead to some heart problem?

"A. Yes."

Other evidence indicates the doctor considered the physical exertion of the claimant at the London fire in arriving at his conclusions.

A written report from this witness was admitted in evidence without objection, and it recites that part of the history taken from the claimant was that he worked at this fire two or two and a half hours. The doctor testified further, when asked to relate the history:

"A. Well, he (claimant) was in a very difficult fire, called the London fire in which he was subjected to smoke, and difficult to get to the fire. While he was fighting this fire he took a pain in his substernal region running into his shoulders which had the symptoms of a heart attack; \* \* \*.

\* \* \* \* \* \*

"Q. \* \* \* Do you have an opinion as to the cause of that attack?

"A. His exposure to the smoke and the heat and exertion, and, of course, there is always some nervous tension in those things."

There was sufficient evidence in the record that claimant was under a strain, both mental and emotional, as well as physical, at the time and place of the severe London fire, and that these matters were considered by the attending physician in reaching his opinion that the cause of claim-ant's disability was job-connected. **The** failure of the doctor to include in his history some of the details connected with the incident will not necessarily invalidate the medical conclusion he reaches nor destroy the probative effect of his testimony provided such omitted details are not essential to such conclusion. See Big Four Cold Storage, et al. v. Shanks, Okl. (1966), 411 P.2d 546, and Black, Sivalls & Bryson, Inc. v. Coley, Okl. (1962), 367 P.2d 1017.

Respondent's second proposition is to the effect that relating the myocardial infarction causally to an on-the-job strain suffered by the claimant one week previously is contrary to the "best legal and medical authorities" as too remote.

In Ada Coca-Cola Bottling Company v. Snead, Okl. (1961), 364 P.2d 696, cited by the respondent in support of its second contention, the facts were that the claimant's decedent suffered an accidental fall while on the job. This occurred in 1957 and resulted in temporarily disabling injuries not related to a heart condition. Thereafter the employee suffered a stroke or cerebral thrombosis which resulted in his becoming totally disabled. At that time he was eighty years old. Three years later he died of a heart attack. The contention was there advanced that while the decedent's job-suffered injury did not directly result in his heart disability and death, the injury did cause him to "worry" over his inability to support his family, and *this* resulted in his heart attack and death. We simply held that under the circumstances of that case the evidence was insufficient to demonstrate a "causal relationship" between the job-suffered injury and the heart disease. We do not consider that case as authority supporting respondent's proposition here.

In Ada Coca-Cola Bottling Company v. Snead, supra, we pointed out:

"In the instant case, no unusual exertion or strain was shown; there was no evidence of pain indicating any kind of heart involvement at the time of the original accident; and the heart attack

did not occur until almost three years after the accident."

In Ben Hur Coal Company v. Orum, Okl. (1961), 366 P.2d 919, claimant's decdent described symptoms of heart disability while at home, and within a few days after that date, and after working under adverse conditions eight hours shoveling coal, he suffered a heart attack resulting in his death. The defense was in effect that the decedent was only performing his usual duties and nothing out of the ordinary occurred in connection with his work which caused his heart attack. There was medical evidence that the work being performed by the decedent was sufficient to be a competent producing cause of the heart attack; in fact, there was no medical evidence to the contrary. Referring to Gulf Oil Corporation v. Rouse (1949), 202 Okl. 395, 214 P.2d 251; Safeway Stores, Inc. v. Simons, Okl. (1958), 331 P.2d 934; and Liberty Glass Co. v. Guinn, Okl. (1953), 265 P.2d 493, in Choctaw County v. Bateman (1952), 208 Okl. 16, 252 P.2d 465, we said:

"The language used in all of these cases indicates that it is the strain which constitutes the accidental injury. If there is any unusual incident or condition it is mentioned as evidence to support the finding as to the strain."

In Ben Hur Coal Company v. Orum, supra, we also said:

"It was a question of fact and not of law to be determined by the State Industrial Court from the lay and medical proof whether the physical effort of the employee was sufficient in degree to produce, and did produce, the strain which culminated in the heart attack and death of employee. The finding of the State Industrial Court on such issue will not be disturbed on review when reasonably supported by competent evidence. Farmers Co-operative Association v. Madden, Okl., 356 P.2d 741."

In Black, Sivalls & Bryson, Inc. v. Coley, supra, the claimant's disability was occasioned by two separate occurrences of myocardial infarction. The first occurred on November 27, 1959, and the second on October 27, 1960. The first incident occurred while claimant was performing stressful activities on the job and was accompanied by pains symptomatic of heart disability. Claimant was able, however, to return to duty, and on October 27, 1960 again worked a hard day on the job. That night at home he suffered his second attack which precipitated his disability. In sustaining an award for disability, we held:

"The pattern of proof necessary to show an accidental injury from work-connected strain consists of two essential elements: (a) lay testimony as to the nature of labor performed by the workmen when injured; (b) expert opinion that the exertion attendant upon such physical activity as shown was sufficient in degree to, and did in fact, produce the strain to which disability is sought to be attributed. * * * Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741, 744."

Thus we recognized specifically in Black, Sivalls & Bryson, Inc. v. Coley, supra, that causal connection between the occurrence of an on-the-job stress and the subsequent appearance of disability to the heart is not a question of law but one of fact. The issue is determinable by reference to the testimony of those skilled in the healing arts.

The evidence is that claimant sustained his first symptoms characteristic of a heart attack while undergoing the stress and responsibilities of his job on January 30, 1965. The evidence further showed that these symptoms recurred more or less frequently from that date until February 6, 1965.

■■■■ In light of our previous holdings, we do not believe it to be the proper function of this court to say, more or less in an arbitrary fashion, that when a period of seven days has elapsed between the occurrence of a strain while on the job and the subsequent onset of disability that such disability did not result (as a matter of law) from the previous strain.

We deem such question to be peculiarly within the knowledge of expert medical witnesses and therefore a question of fact, and a conclusion and finding of the trial court based thereon, if supported by sufficient evidence, although conflicting, will not be disturbed by this court on review.

Award sustained.

All the Justices concur.