**SOONER CO–OP, INC., and Farmers Elevator Mutual Insurance Company, Petitioners,**

**v.**

**Clara Elizabeth KOOP and State Industrial Court, Respondents.**

**No. 47334.**

Supreme Court of Oklahoma.

April 22, 1975.

Rehearing Denied Oct. 7, 1975.

Cheek, Cheek, & Cheek, Ray Teague, Oklahoma City, for petitioners.

William R. Davis, Oklahoma City, for respondents.

HODGES, Vice Chief Justice:

Sooner Co-op, Inc., (Sooner) and Farmers Elevator Mutual Insurance Company (Farmers) bring this proceeding to review a State Industrial Court order, which affirmed a trial judge's order. The order awarded death benefits to claimant, surviving widow and sole dependent suffering pecuniary loss from deceased's death in course of covered employment. The deci-

sive issue is whether there was competent medical evidence as to cause of death to support the award.

Form 3A alleged death resulted from heart attack induced by stress and strain, and lifting grain. Sooner and Farmers denied that death resulted from accidental injury, and alleged death was unrelated to or connected with employment. At the hearing, evidence was presented concerning long working hours, job pressures, heat, and harassment by co-worker, in an effort to establish job-related causation. Hazardous employment, applicable compensation rate, and alleged accidental death June 15, 1973 in course of employment were stipulated. Relevant facts summarized are not in serious conflict.

Walter Edward Koop (Koop), deceased, 77 years old, obese individual was hired June 9, 1973, as a grain buyer. He worked without direct supervision. His duties involved buying wheat for storage after making a moisture test. Ordinarily, tests were made by using a small receptacle to obtain a half-pound of grain, although sometimes a probe was utilized. Work was performed from inside a small scale house which comprised the office. Trucks were driven onto the scale platform for weighing, and a sample procured for testing moisture content prior to purchase and storage. No physical labor was involved other than walking out of the scale house and up 3–4 feet of steps to procure samples. If grain was purchased after weighing and sampling, a truck was unloaded into the elevator and returned to the scales to be reweighed, after which weight and bushels would be computed. A young college student helper generally handled these calculations, although sometimes Koop did this.

Deceased's hours were 8–5 with 30 minute breaks allowed for meals. During harvest season hours were longer, and the elevator remained open until 9–10 P.M., although Koop was permitted to set his own hours, or decide when he desired to leave in the evening. A purported daily record was admitted in evidence, which showed he had worked one ten hour day, and four thirteen hour days, although no evidence showed remuneration on an hourly basis. His employment was during a monotonously slack period.

Koop's supervisor had learned of the disagreement which had developed between deceased and the helper in regard to the manner of taking samples. About 2:30 P. M. on June 15th, Koop called concerning an argument, and the supervisor went to the scale house intending to transfer the helper to another elevator. Upon arrival, he found the two involved in an argument and Koop appeared upset. The supervisor advised the helper he would be taken to another elevator. They were preparing to leave when another truck drove onto the scale blocking their view. The driver called out something was wrong and, upon going around the truck, deceased was discovered lying on his back on the platform. He was moved into the office and an ambulance called. One effort to breathe was noted but he was dead on arrival at an Okeene hospital. Only a minute had elapsed between leaving the office and time witness walked back around the truck and discovered Koop. The temperature that day was in the low nineties.

The report of a physician (Dr. L.), who pronounced Koop dead on arrival at the hospital, was introduced at the hearing. It was his opinion death had resulted from acute myocardial infarction, which was not job-related.

Sooner and Farmers also offered the report of Dr. S. R. Mc., who had reviewed statements concerning death, the hospital report, and prior hospital record concerning Koop's heart attack in 1952, which had been disclosed by testimony of his daughter. Considering absence of autopsy, and job duties, prior to demise, the physician concluded deceased presumptively suc-

cumbed to ventricular fibrillation, probably resulting from long term arteriosclerotic changes unrelated to employment.

The claimant widow introduced the report of Dr. H. A. S., rendered in response to an extended written hypothetical question, as medical evidence to establish the cause of death. It stated:

"It is my medical opinion and judgment based upon the hypothetical factual circumstance presented that Mr. Koop's death was caused as a result of an *acceleration and aggravation of a previous heart condition due to the long and protracted working schedule performed by him, the heat, and the pressures of a job complicated by the acts of a co-worker which resulted in a myocardial infarction* and occlusion causing his death while in the course of performing his job related duties, as described, on the 15th day of June, 1973."

■ Settled law declares that when reviewing State Industrial Court orders or awards, the Supreme Court does not weigh conflicting evidence to determine preponderance thereof, but examines the record only to ascertain whether there is any competent evidence to support the finding reviewed. *Howey v. Babcock & Wilcox Company*, 516 P.2d 821 (Okl.1973). Expert testimony established death resulted from heart attack, although there was no direct medical evidence disclosing the cause of the attack, or connecting work related activities to deceased's sudden demise.

■ Under these circumstances it is generally recognized that resolution of the problem necessitates reliance upon circumstantial evidence. *Young v. Neely*, 353 P. 2d 111 (Okl.1960). This evidence is not required to be established to a degree of certainty which excludes every reasonable conclusion other than that reached by the finder of facts. *Flint v. Downum Const. Co.*, 444 P.2d 200 (Okl.1968) and cases cited. Circumstantial evidence adduced by resort to a hypothetical question is suffi-

cient when the inquiry fairly recites facts in evidence which are relevant, material, and sufficient as a basis for formation of an accurate opinion by an expert witness. *Farmers Co-Op. Exchange of Weatherford v. Krewall*, 450 P.2d 506 (Okl.1969) and cases cited. The natural corollary of this rule makes incompetent an expert opinion based upon assumed facts not shown by the evidence. *Glaspey v. Dickerson*, 350 P.2d 939 (Okl.1960).

Consideration of matters assumed as facts in the hypothetical question to the physician, reflects inclusion both of impermissible inferences and assumed facts not supported by evidence. Undue emphasis was placed upon long hours worked, thereby inferring deceased's entire working time was occupied by assigned duties. The undisputed evidence showed this was a slack period and monotonous for lack of business.

There was evidence which related to the personal disagreement between Koop and his helper, which the supervisor understood and intended to remedy by transferring the helper. It did appear deceased was upset the afternoon of death, although the evidence is conflicting as to the real extent of controversy. There is no evidence supporting claimant's recitation that her husband was continually harassed, required on several occasions to pick up grain tickets thrown onto the floor by the helper, or was working under a state of confusion created by circumstances. Even accepting the assumptions fully as fact, standing alone they lack probative value under the holding in *Liebmann Artic Co. v. Henderson*, 486 P.2d 739 (Okl.1971).

No evidence established the existence of a porch along the building which required deceased to reach out and over grain beds of trucks to secure samples. Stress was placed upon the weather factor, although nothing indicates the heat was more oppressive than an ordinary June day. Job pressure was a particular factor expressed in the physician's opinion. No evidence

reflected pressure from work activity, other than disagreement with the co-employee. Assumed facts relating to deceased going in and out the building, exposure to the sun many times each day, and being required to go up and down the steps on many occasions, find no support in the record. No effort was made to support these evidentiary assumptions by corroborating testimony. So far as disclosed by the evidence, Koop's last trip to procure a grain sample was the only work-connected incident performed that day, although possibly other evidence existed which would have shown the extent of work performed.

An assumed fact that Koop was lying on the platform in a manner which indicated something struck him while attempting to obtain grain sample is without evidentiary support. Admittedly he sustained a heart attack many years prior to his demise. Absent other evidence as to cause, extent, eventual recovery and residual effects, probative value of a material assumption as to pre-existing heart condition at all times referred to was diminished by lapse of time.

Claimant's only medical evidence was the physician's opinion in response to a hypothetical question. The question included assumptions of fact not established by evidence. The physician's opinion that death resulted from aggravation of pre-existing heart condition was based upon consideration of matters discussed and therefore incompetent. *Glaspey v. Dickerson,* supra. An award of compensation which is unsupported by competent medical evidence will be vacated. *Kinser v. Western Sands, Inc.,* 454 P.2d 305 (Okl.1969); *Fisher v. Douglas Aircraft Co.,* 440 P.2d 708 (Okl.1968).

Award vacated.

DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

WILLIAMS, C. J., and LAVENDER, J., dissent.