**BOSTICK TANK TRUCK SERVICE, Petitioner,**

v.

**Wynola Nadine NIX, Respondent.**

**No. 63177.**

Supreme Court of Oklahoma.

Nov. 15, 1988.

---

7. 192 P. at 214.

8. 45 O.S.1981 §§ 742.1 through 792.

9. See 45 O.S.1981 § 746 and 45 O.S.1981 § 757.

10. 52 O.S.Supp.1982 § 318.2.

Michael Mancillas, Messrs. Oldfield & Coker, Oklahoma City, for petitioner.

John Sprowls, Pauls Valley, for respondent.

OPALA, Justice.

The dispositive issue in this case is whether the trial tribunal's death benefit award is supported by competent evidence showing a causal nexus between the prior on-the-job heart attack and the later episode of death-dealing fibrillation. We answer in the affirmative.

█ Claimant, the widow of a deceased worker, sought death benefits under the Workers' Compensation Act.[1] Her husband died in 1983 after a cardiac pacemaker implant. She attributes her husband's death to a heart attack which he sustained eleven years earlier.[2] While employed by Bostick Tank Truck Service [employer], the decedent suffered a compensable heart attack in 1972 and was adjudged to have been rendered totally and permanently disabled. In 1980 he went to work again for a different employer and continued there for over two years. In 1983 the decedent had chest pains for which he sought medical attention. A temporary pacemaker was inserted to correct rhythmic disturbances and an intermittently slow heart rate (bradycardia). During that procedure, though his heart began fibrillating, he was resuscitated. Soon after the implant of a permanent pacemaker, he again developed fibrillation. This time corrective procedures failed and he died. The trial judge allowed death benefits, and a three-judge review panel adopted the award. The employer now seeks appellate relief.

I

## THE CAUSAL NEXUS BETWEEN THE DEATH–DEALING FIBRILLATION EPISODE AND THE PRIOR COMPENSABLE HEART INJURY

█ An employer is liable for all "legitimate consequences of a compensable injury."[3] Whether the decedent's death is causally connected with his 1972 cardiac episode is a question of fact that must be established by expert testimony.[4] Because this court's range of corrective power is *statutorily confined* to reexamination of law questions, our *sole* task on review is to canvass the record and ascertain whether the award is supported by competent evidence.[5] We need only look to the claim-

---

1. 85 O.S.1981 §§ 1 et seq.

2. The law does not place a limit on the maximum allowable time interval between an on-the-job accident and death. In *Roberts v. Merrill,* Okl., 386 P.2d 780, 785 [1963], we held that the provisions of 85 O.S.1961 § 22(7), which precluded compensation recovery when death occurred more than five years after the injury, violated Art. 23, § 7, Okl.Const. "The cause of death, regardless of the time when death occurs, presents an adjudicatory fact to be resolved from the evidence, and the Legislature continues to be without power of predetermining causation by means of a statutory fiat." *Roberts v. Merrill, supra,* at 785.

3. A "legitimate consequence of a compensable injury" is an injury, disease or death proximately resulting from a subsequent deterioration or aggravation of the original injury. *Ada Iron Metal Company v. Tarpley,* Okl., 420 P.2d 886, 888 [1966] and *In re Greer,* Okl., 356 P.2d 356, 359 [1960].

4. *Haynes v. Pryor High School,* Okl., 566 P.2d 852, 853–854 [1977]; *City of Tulsa v. State Industrial Court,* Okl., 434 P.2d 203, 207–208 [1967]; and *Chief Freight Lines, Inc. v. Rines,* Okl., 395 P.2d 799, 802 [1964].

5. 85 O.S.Supp.1986 § 26(B), *infra; Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 552 [1984]; *Haynes v. Pryor High School, supra* note 4 at 854; *Tippett & Bond v. Moore,* 167 Okl. 636, 31 P.2d 583, 584 [1934]; and *Skelly Oil Co. v. Skinner,* 162 Okl. 150, 19 P.2d 548, 549 [1933] (syllabus 1).

The pertinent terms of 85 O.S.Supp.1986 § 26(B) are:

"* * * The [Workers' Compensation] Court shall have full power and authority to determine all questions in relation to payment of claims for compensation under the provisions of the Workers' Compensation Act. The Court shall make, or cause to be made, such investigation as it deems necessary, and upon application of either party shall order a hearing, and as soon as practicable, after a claim for compensation is submitted under this section, or such hearing closed, shall make or deny an award determining such claim for compensation, and file the same in the office

ant's medical proof,[6] the substantial part of which is in expert testimony given by deposition.

■ According to the record, the 1972 injury caused damage to the right side of the decedent's heart. Although no active tissue deterioration had developed from it, and his heart was "damaged as much as it was going to be," the decedent's adjudicated heart pathology was shown to have passively as well as actively contributed to the cause of his death. Chest pains (angina) brought the decedent to the hospital, where a diagnosis of bradycardia and rhythmic disturbances called for a pacemaker implant. During this procedure the pacemaker wire irritated the "hyperexcitable" tissue surrounding the area of the heart damaged by the prior accidental on-the-job injury. It is that physical contact which induced the fibrillation directly causing decedent's death.

To a "great extent" death was attributed to the disease process (atteroschlerosis) on the *left* side of the heart. The damage to the right side sustained in 1972, which forced the left side to "work harder," coupled with the advanced coronary disease, brought about both the angina and bradycardia. According to the claimant's medical expert, (a) the prior compensable injury increased the chances of death by 40 to 50 percent and, (b) although the decedent's preexisting disease process made it "probable" that the pacemaker would be needed even if his heart had not been damaged by the compensable accident of 1972, the death-dealing fibrillation episode probably would not have occurred in the absence of the previous on-the-job heart attack.

When assessed by the standards of proof pronounced in *Oklahoma City v. Schoonover*,[7] the evidence viewed in its totality demonstrates the on-the-job heart attack's causal nexus with the subsequent death-dealing fibrillation. The latter episode cannot be viewed as a separate, disconnected, independent or supervening cause of death. The chain of causation is not deemed to be legally broken where, as here, the medical proof shows that, but for the prior on-the-job heart attack, fibrillation would not have occurred.

## II

### THE PROBATIVE EFFECT OF THE CLAIMANT'S EXPERT OPINION

■ The employer next urges that the claimant's medical evidence lacks probative value because it is based on the erroneous assumption that the decedent took nitroglycerin medication on a regular basis for several years following his 1972 cardiac episode. This contention presupposes that (a) the witness considered the assumed fact to be material to his opinion and (b) the causal nexus between the 1972 compensable heart injury and the decedent's death would be deemed broken if the assumed fact had been excluded from the witness' consideration.

■ The employer's contention lacks legal merit for two reasons: (1) no showing has been made either that the allegedly erroneous assumption is false or unfounded, or that the claimant's medical expert actually considered it to be material to his opinion,[8] and (2) the employer advances no record-supported argument to show how

of the Administrator, together with the statement of its conclusion of fact and rulings of law. Upon a hearing pursuant to this section either party may present evidence and be represented by counsel. *The decision of the Court shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law.*" [Emphasis added.]

6. See *Haynes v. Pryor High School, supra* note 4 at 854.

7. Okl., 535 P.2d 688, 692 [1975]; see also, *Matter of Death of Stroer*, Okl., 672 P.2d 1158, 1161 [1983].

8. After reviewing the deceased's medical reports and hospital records, the employer's medical expert stated:
"It was noted that he [the decedent] *had not required* the use of Nitroglycerin apparently in many years. It was also noted that he was taking Blocadren, 5 mg. bid, Nitrol ointment, 1 inch q 8 hrs., Nifedipine, 10 mg. qid." [Emphasis added.]
In a 1983 hospital report the decedent's attending physician stated "[t]his patient then suddenly reported the onset of chest pain this evening which has been responsive to *Nitro* but he has required *increasing taking of Nitroglycerin*

the "wrongly" assumed fact is or could have been material or even relevant to the expert's opinion on causation.[9] The law does not require the medical history considered by an expert to include *all* the facts the evidence tends to prove. The history assumed by the expert must substantially include those facts which the evidence tends to establish and which are not materially inconsistent with the adduced proof in the record.[10]

■ The expert's opinion need only connect decedent's death to some "extension or enlargement" of the preexisting compensable injury.[11] The duty rests upon the cross-examiner either to elicit from the witness the failure to assume a fact conceded to be material or to show that the omitted fact is indeed indispensable so that its omission from the range of facts to be assumed is fatal to the probative value of the expert's opinion.[12] This responsibility of the cross-examiner clearly is cast by the Oklahoma Evidence Code [13] which has abrogated the earlier *common-law requirement* that an expert's opinion be elicited by

---

*which he has not done in many years ...."* [Emphasis added.] Other portions of the record cited by the employer also fail to show that the decedent did *not* take nitroglycerin on a regular basis for several years.

The claimant's medical expert gave the following testimony about the decedent's "course or progress between 1972 and 1983":

"He had to be on Beta Blockers which are drugs that stop the heart from being irritable, they cut down the amount of angina that he had. * * * *He had to go on Nitro creme* for the angina that he was having *which is creme that you put on your body and it absorbs the nitroglycerin in the body.*" [Emphasis added.] When asked by the employer's counsel about the decedent's medical history, the claimant's expert stated: "I think he had angina off and on from 1973. He continued to take his *medication* during all that time and I think the medication was relatively successful with him but he had worsening of it in 1983." [Emphasis added.] Even if we assume that the term "medication" refers to or includes nitroglycerin, the record is devoid of any indication that usage of this drug was material to the medical opinion which causally connected decedent's death with his 1972 compensable heart attack.

9. In its brief to this court the employer merely "suggests" that the issue—whether decedent regularly took nitroglycerin medication—is material to *the expert opinion linking decedent's death* to his previous compensable injury. No place in the record is cited for the support of this contention. Cf. *Glaspey v. Dickerson,* Okl., 350 P.2d 939, 942 [1960].

10. *H.J. Jeffries Truck Line v. Grisham,* Okl., 397 P.2d 637, 641 [1964].

A medical expert's answer to a hypothetical question lacks probative value if it is based on the *existence of a material fact* that has not been established by the evidence. *Glaspey v. Dickerson, supra* note 9, and *Sooner Co-op, Inc. v. Koop,* Okl., 540 P.2d 572, 575 [1975]. In *Glaspey* the hypothetical question assumed facts not supplied by evidence. On cross-examination, these facts were shown to have been material to the expert's ultimate conclusion. The witness then

unequivocally conceded that his opinion would substantially change if he were to disregard the assumed facts.

11. See *Refrigerated Transport Inc. v. Creek,* Okl., 590 P.2d 197, 201 [1979] (Opala, J., concurring).

12. See 12 O.S.1981 §§ 2703 and 2705; *Refrigerated Transport Inc. v. Creek, supra* note 10; and *Glaspey v. Dickerson, supra* note 9. The terms of § 2703 provide:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts* in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*" [Emphasis added.] Section 2703 affords an option between "the traditional common-law practice of permitting an expert to testify in response to a hypothetical question reasonably supported by the evidence in the case, or [the Code-sanctioned method of allowing the witness] to testify on a basis of testimony heard by the expert while attending the trial." 1 Whinery, Oklahoma Evidence, 1988, Art. 7, § 2703 at 244.

The terms of § 2703 provide:
"The expert may testify in terms of opinion or inferences and give his reasons therefor *without prior disclosure* of the underlying facts or data, unless the court requires otherwise. The expert may be required to disclose the underlying facts or data *on cross-examination.*" [Emphasis added.]

"Section 2703 provides, in effect, that the admissibility of the opinion is not dependent upon the admissibility of the underlying data. Section 2705 complements Section 2703 and *does not require, but permits,* the direct examiner to bring out the underlying data upon which the expert's opinion is based, if it is appropriate and does not confuse the trier of fact or require undue time consumption." [Emphasis added.] 1 Whinery, Oklahoma Evidence, § 2705, *supra* at 255.

13. 12 O.S.1981 §§ 2101 et seq.

means of a hypothetical question.[14]

### III

### THE EMPLOYER'S FUNDAMENTAL-LAW CLAIM TO *EX LEGE* EXONERATION FROM AFTER-ENACTED BENEFIT RATES

The employer argues further that the award should be vacated because (1) the trial tribunal failed to calculate benefits in accordance with the compensation rates in effect at the time of the decedent's 1972 compensable injury and (2) the imposition of an award in accordance with rates enacted *after* the employer's compensation insurance policy had expired violates several constitutional provisions, particularly Art. II, § 15, Okl. Const.[15]

▮ The quantum of statutory death benefits due a claimant is determined by the law in effect at the time of the worker's death.[16] The tendered question—whether this rule violates some fundamental-law principle—is not properly before us, since the employer had failed to preserve it for our review. On its appeal to the three-judge panel of the Workers' Compensation Court the employer had urged for vacation but a single point—that the award was without evidentiary support. Error not raised before a trial tribunal's review panel cannot be considered either in this court or in the Court of Appeals.[17] Moreover, the record is barren of indispensable proof showing the employer's critical coverage period for the workers' compensation liability policy in question. The insurer's incorporation of this documentary material is indeed essential for our consideration of its fundamental-law claim, as the employer's statutory co-obligor, to an *ex lege* exoneration from after-enacted benefit rates.[18]

The employer's remaining argument—that the award contravenes the purpose of our compensation laws—also lacks merit. It is premised on an absence of competent evidence linking decedent's death-dealing fibrillation episode with his prior compensable injury.

The proceedings are free from vitiating legal error and the award is supported by competent evidence.

### AWARD SUSTAINED.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER and ALMA WILSON, JJ., concur;

> The pertinent terms of 85 O.S.Supp.1986 § 3.6(D) are:
>
> "* * *
>
> Benefits for an injury shall be determined by the law in effect at the time of injury; *benefits for death shall be determined by the law in effect at the time of death.*" [Emphasis added.]

**14.** See *Clark v. Continental Tank Co.,* Okl., 744 P.2d 949, 952 [1987]; *Smith v. Ford Motor Co.,* 626 F.2d 784, 793 [10th Cir.1980]; Evidence Subcommittee's Note on 12 O.S.1981 § 2705; and Rule 705, Federal Rules of Evidence, Notes of Advisory Committee on Proposed Rules. (Oklahoma's § 2705 is virtually identical to Rule 705, Federal Rules of Evidence.) See also, *supra* note 12.

**15.** The terms of Art. 2, § 15, Okl. Const. provide: *"No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed.* No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties." [Emphasis added.]
The employer also contends that the award violates Art. I, § 10 of the federal constitution as well as the 14th Amendment's Due Process Clause.

**16.** 85 O.S.Supp.1986 § 3.6(D), *infra,* and *Independent School District No. 89 v. McReynolds,* Okl., 528 P.2d 313, 315 [1974].

**17.** *Johnston Food Co. v. Monday,* Okl.App., 702 P.2d 62, 64–65 [1985], citing *Parks v. Norman Municipal Hospital,* Okl., 684 P.2d 548 [1984]; see also, *McConnell v. Y.M.C.A. of Greater Oklahoma,* Okl., 515 P.2d 575, 578 [1973] and *O.K. Iron & Metal Company v. Sandoval,* Okl., 434 P.2d 247, 249–250 [1967].

**18.** See *National Bank of Tulsa Building v. Goldsmith,* 204 Okl. 45, 226 P.2d 916, 919–920 [1951]; *Employers Casualty Co. v. Carpenter Bros.,* 204 Okl. 312, 229 P.2d 592, 593–594 [1951]; and *New York Life Ins. Co. v. Razzook,* 178 Okl. 57, 61 P.2d 686, 689–690 [1936].

KAUGER, J., concurs by reason of stare decisis.

HODGES and SIMMS, JJ., dissent.