Sam KIER, d/b/a Sam Kier Heating & Air Conditioning and Central Surety and Insurance Corporation, Petitioners,

v.

Iva BURTON and the State Industrial Court, Respondents.

No. 40313.

Supreme Court of Oklahoma.

June 25, 1963.

Rehearing Denied Oct. 8, 1963.

Savage, Gibson, Benefield & Shelton, by Robert E. Shelton, Oklahoma City, for petitioners.

Garrison, Preston & Preston, by Denzil D. Garrison and Thomas B. Preston, Bartlesville, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice.

The decision under review allows statutory death benefits to the widow and dependent children of a deceased workman. The award rests upon the trial tribunal's finding that decedent's death on August 2, 1961, was caused by an electric shock sustained in the course of his employment.

The principal issue of fact formed in the proceeding below, and tendered by the employer on review, is whether decedent's death arose out of an accidental injury or from causes unrelated to his employment. Employer asserts the record compels a finding of death from a spontaneous or idiopathic heart failure and submits that there is no competent evidence to support the finding that the deceased did in fact sustain

an electric shock which caused a cardiac arrest and led to his immediate death.

Employer's brief is replete with arguments directed to the weight of the evidence. However, by provision of statute, the scope of this court's examination on review is limited to errors of law. 85 O.S. 1961 § 26, Black, Sivalls & Bryson, Inc. v. Coley, Okl., 367 P.2d 1017, 1020; and Cherry v. Eagle-Picher Co., Okl., 368 P.2d 833, 834. By force of the cited statute this court may not undertake a redetermination of disputed fact questions which the trial tribunal resolved from competent evidence elicited by the adversary parties. The State Industrial Court, and not this court, is the sole judge of the credibility of witnesses, be they lay or expert, who appear before it, and of the weight and value to be accorded to their testimony. Wade Lahar Construction Company v. Howell, Okl., 376 P.2d 221, 222.

Whether the death of a workman was caused by an accidental injury arising out of his employment or resulted from a fatal internal condition of a spontaneous origin, presents a question of fact for the determination of the State Industrial Court, whose finding on such issue will not be disturbed on review if reasonably supported by competent evidence. Boardman Company v. Eddy, Okl., 363 P.2d 821, 823.

On the day of his death decedent was working in a residential home then under construction. He was installing a part of the heating system in a small area described as the heater closet. When found by other workmen on the job site he was seated on the concrete foundation slab "with his feet down" in that portion of the duct system which is known as the "plenum" box. He was leaning backwards, holding with both hands an electric drill which was "vibrating him". His clothes were "wet with sweat" and he was gasping for air. One of the workmen who "grabbed" the drill from his hands, "definitely" received an electric shock while removing the appliance from the hold of the decedent. The bit was still turning, although it remains somewhat uncertain if the drill's motor was then running. Decedent's legs were "pulled out" of the metal duct and his body moved into the hall of the house where several of the workmen undertook to apply artificial respiration until the ambulance arrived some ten minutes later. Almost immediately after decedent was taken out of the heater closet area he began "changing colors". He was dead on arrival at the hospital.

After disconnecting the drill from its power source, several workmen on the job site discovered that the decedent, while in the heater closet, had been seated upon the exposed part of the extension cord which had a "bare wire" sticking out through "worn-off" insulation. According to the testimony, the insulation was "peeled back where you could see both wires". One of these conductors was completely exposed and the other, a white wire, looked "black", "dirty" and "burned". While no one definitely knew whether the plenum box and the duct system connected therewith, were or were not at that stage of construction fully insulated from the ground with nonconductive plastic material, some of the workmen testified that the box rested on sand-filled dirt and that copper lines ran "through there and * * * right over the duct."

As we view the record so outlined, there is ample competent evidence from which the trial tribunal could have found that decedent came in contact with an exposed positive conductor of the defective extension cord and that his body did become "grounded" on touching the plenum box. The question of whether death arose out of the employment may be resolved from circumstantial evidence which does not rise to that degree of certainty as to preclude reasonable men from drawing opposite inferences. An award is not purely conjectural or based on speculation merely because the issues of fact were determined from evidence which might have justified a different finding. Terry Motor Company v. Mixon, Okl., 361 P.2d 180, 182; Rialto Min-

ing Co. et al. v. Yokum et al., 153 Okl. 297, 5 P.2d 1065; Special Indemnity Fund v. Horne, 208 Okl. 218, 254 P.2d 988, 992.

Neither can we agree with employer's argument that there is no competent medical evidence to support the factum of a cardiac arrest from an electric shock. According to Dr. G, who performed an autopsy on decedent's body, there was "no evidence of sufficient organic disease to account for this patient's death." In answer to a hypothetical question which fairly comprised all of the salient facts in evidence, Dr. G unequivocally stated that the absence of "distorted anatomy" would indicate no cause of death other than from an electric shock. Another physician, Dr. N, testified that decedent's contact with the exposed wire was sudden and without warning. He viewed the element of surprise as important because a man's tolerance "for electric shock varies considerably with his anticipation of it." It was Dr. N's opinion that death was attributable to a cardiac arrest produced by a sudden electric shock.

The opinions of both physicians are clearly based on a process of scientific reasoning. Their medical evaluation rests on a comprehensive history of the injurious event as well as on the autopsy protocol. The probative value of this expert opinion stands unimpaired. Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741, 745; Boardman Company v. Eddy, supra.

For the employer Dr. B concluded, based on the identical protocol and history, that decedent's death was caused by a spontaneous coronary attack.

The autopsy report did not yield any single anatomical finding which compelled either of the opposite conclusions reached by the medical experts. Although the actual cause of death could not be substantiated by any outstanding physical factor and therefore cannot be entirely free from some degree of scientific uncertainty, the question remained essentially one of fact. Boardman Company v. Eddy, supra; Botts-Hulme & Odell et al. v. Tate et al., Okl., 265 P.2d 709, 710; Anderson-Prichard Oil

Company v. Floyd, Okl., 340 P.2d 943. Both adversary parties elicited competent medical evidence in support of their divergent theories of causation. The trial tribunal resolved the disputed issue adversely to the employer and its finding has ample basis in competent evidence adduced. It is neither the duty nor the province of this court to disturb such determination on review. In re Greer, Okl., 356 P.2d 356; Boardman Company v. Eddy, supra.

The decision is not otherwise challenged. We find the proceeding free from errors of law.

Award sustained.