**FLINT CONSTRUCTION COMPANY and Casualty Insurance Company of California, Petitioners,**

v.

**Lady A. DOWNUM and State Industrial Court, Respondents.**

In the Matter of the Death of
Lester J. Downum, Jr.

No. 42043.

Supreme Court of Oklahoma.

July 16, 1968.

Gerald K. Donovan, Rogers, Donovan & Rogers, Tulsa, for petitioners.

Marx Childers, Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

HODGES, Justice.

There is involved here for review an award of the State Industrial Court allowing respondent Lady A. Downum, claimant below as the surviving widow and mother of the surviving children of Lester J. Downum, Jr., deceased, death benefits under the death benefit provisions of the Oklahoma Workmen's Compensation Act. Parties will be referred to here as they appeared before the State Industrial Court. The deceased Lester J. Downum, Jr., will be referred to as "deceased".

Respondents prosecute this appeal from an order of the State Industrial Court, sitting en banc, affirming an award entered by the trial judge in favor of the claimant.

The sole question presented to this court for review is the sufficiency of the evidence to sustain the award. The question of whether, under the circumstance of this matter, the deceased was engaged in a hazardous employment within the coverage of the Workmen's Compensation Act is not presented.

Deceased, a bookkeeper and accountant was employed by the respondent at its office in Locust Grove, Oklahoma, for several years prior to his death on March 23, 1965. During the month of February, 1965, a certified public accountant employed by respondent and in charge of the accounting and bookkeeping at the Locust Grove office died and deceased was re-quired to assume his work in addition to his own with some assistance from the wife and stepson of the deceased accountant.

Early in 1965, respondent commenced the removal of its office from Locust Grove, Oklahoma, to Little Rock, Arkansas, and all officers and other employees of respondent with the exception of deceased moved to Little Rock. Deceased was left alone at the Locust Grove office for the purpose of boxing up the records, files and other equipment. In doing this work he was required to carry large boxes of documents stored in a warehouse a distance of about 75 or 100 feet to the office.

On Tuesday March 23, 1965, between 3:00 and 4:00 in the afternoon Junior L. Hutchins, an acquaintance of the deceased, visited in the office. Hutchins assisted the deceased in moving several large boxes from the warehouse to the office. Hutchins testified that the boxes contained ledger sheets and other documents, property of the respondent and were bulky and heavy. In moving the boxes it was necessary for the men to stoop over, put their hands under the boxes and lift them. It was necessary to carry the boxes through four doors with a clearance of about three inches. Deceased carried three smaller boxes by himself. Hutchins testified that the boxes were heavy and picking them up caused a strain of a man's body. About ten or twelve boxes were left in the warehouse. At the time he first entered the office deceased was seated his desk working on some papers. Deceased had his coat off but put it on when they went to the warehouse. Hutchins left the warehouse about 4 o'clock in the afternoon. Deceased said to him "I'll see you". The temperature in the office was around 75 degrees but the weather outside was cold with a stiff wind and a fine skift of snow.

The operator of a store adjacent to the office where the deceased worked testified that she saw the deceased several times during the day of Tuesday March 23, 1965, the last time being about 5:30 P.M. When

she last saw the deceased he looked a little strange like he was tired and worried; that after the other accountant died deceased had been working long hours each day. He worked six days each week and sometimes on Sunday. He was worried about moving the office from Locust Grove to Little Rock. She observed the moving of the boxes from the warehouse to the office. Deceased had been doing the work of three men.

Claimant, the widow of the deceased, testified that for several weeks prior to his death the deceased had been working at the office about 15 hours each day and worked almost seven days of the week. He would come home for his supper and then return to work. He had to arrange for the moving of all the records from Locust Grove. When deceased came home from work he was exhausted. On Sunday March 21, 1965, deceased worked at the office until noon. When he came home he said he was exhausted and was going to take a nap. Claimant thought this unusual and worried about it. Deceased went to work about 6:00 A.M. Monday March 22, 1965. At about 4:00 P.M. deceased called her and said he would have to work late and get ready to go to Little Rock. On the afternoon of Tuesday March 23, 1965, deceased called the claimant's daughter and said he would be home late that afternoon or the next morning. Claimant was away from home on Wednesday, March 24, 1965. Deceased did not return to his home. On Thursday, March 25, 1965, claimant called respondent's Little Rock office and they advised that deceased was not there.

The Little Rock office made an investigation. Parties in Locust Grove secured entrance to the Locust Grove office. They found the body of the deceased in a small storage room adjacent to the office. The body was in a reclining position lying across the boxes previously described. The deceased apparently had been dead for some time.

The county sheriff, two doctors one being the county coroner, and other parties were summoned and made an investigation. Photographs were made of the premises and the body of the deceased before it was moved. These pictures were submitted in evidence. The boxes, a filing cabinet and a small table were the only articles found in the room. The deceased was reclining almost on his back with his hands folded across his chest. Within reach of his left hand were a number of snuffed out cigarette butts and a small portable radio. The witnesses disagree as to whether the battery on the radio had run down. The radio had apparently been used to mash one of the cigarette butts.

The doctors found rigor mortis to have set in particularly in the buttocks of the deceased. The doctors disagree as to the time of death or the value of the existence of rigor mortis in determining the time of death. The estimates vary from six to forty-eight hours before the finding of the body. However, one witness testified that the car of the deceased had not been moved from its parking place near the respondent's office. This evidence lends weight to the testimony of the claimant's doctors that the time of death was Tuesday evening or early Wednesday morning.

The coroner signed the death certificate stating the cause of death to be, "myocardial infarction, coronary occlusion, and coronary artery disease."

Dr. P testifying by deposition as a medical witness for the claimant in answer to a hypothetical question said:

"I am in agreement with the findings of the Coroners, Dr. Puls and Dr. Compton. It is my opinion that his death was due to an acute myocardial infarction and that it was caused, precipitated, and aggravated by the work he was doing on March 23, 1965, and the attending circumstances. Namely, physical and mental fatigue caused by several days excess work with long hours and insufficient rest, heavy and unaccustomed physical exertion on the last day he was able to work, exposure to inclement weather conducive to vascular accidents."

Dr. C called as a witness for the claimant testified he was present and examined the body of the deceased before it was moved and agrees with the findings in the death certificate: "that activities of various sorts can precipitate a coronary occlusion." He further stated:

"Well, I think we will have to say this, that coronaries are precipitated and could be precipitated in any one of us by emotional factors, physical factors, stretchful factors or a combination of all of them that the individual that this will effect because each day you see individuals who are assumed to be well and healthy and then are subjected to physical stress and mental stress and they have a coronary and die, we certainly feel that this contributes or precipitates that, and on the converse we see individuals who have had coronaries who we have on strict regiments of activity, both mental and physical and they are suddenly subjected to a stressful situation, physical and mental and nothing happens to them, so its one of these things again, that we have to assume that it is reasonable that certain factors, the degree of which I don't think anyone can say, but we feel can precipitate or produce coronaries with a result of death in a young individual or an old, either one."

The sole medical witness testifying for the respondent was Dr. T. In answer to a hypothetical question propounded by counsel for the respondent as to whether or not the physical exertion of the claimant in moving the boxes had a relationship to his death, replied, "It could have" and that "physical exertion" is "occasionally" a "significant factor" in "bringing on" a "coronary occlusion." He further states, "I think it is of significance if the exertion is extraordinarily heavy; if it is prolonged." He concluded his testimony by stating:

"Q. Does your whole testimony then boil down to this Doctor, that you don't know what caused this man's death?

"A. Not for certain, no.

"Q. Do you know whether his work had anything to do with his death or not?

"A. No, I do not."

In addition to his work for the respondent the deceased prepared income tax returns for various other parties. He had several of these returns in process of preparation at the time of his death. His wife testified that he generally prepared these returns at home. Several income tax returns were found in his car after his death. The sheriff made an examination of the papers on the desk of the deceased after his death. He testified that the papers all related to the business of the respondent and he found no tax returns. The evidence is insufficient to establish that the deceased was working on income tax returns for other parties at the time of his death.

▬ This court is definitely committed to the rule that a disability attributable to a heart condition caused or precipitated by an antecedent strain or exertion occurring while the employee is doing his work in the usual and customary manner as an employee coming within the provisions of the Oklahoma Workmen's Compensation Act is compensable although nothing unusual occurred to cause the strain or exertion. Bill Gover Ford Company v. Roniger, Okl., 426 P.2d 701; H. J. Jeffries Truck Line v. Grisham, Okl., 397 P.2d 637; Safeway Stores, Inc. v. Evans, Okl., 376 P.2d 336; Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741.

▬ The disability need not be attributable to one particular strain or exertion, but may arise from the cumulative effect of a series of strains and exertions culminating in the disability. Bill Gover Ford Company v. Roniger, Okl., supra; H. J. Jeffries Truck Line v. Grisham, Okl., supra.

▬ In establishing her claim, claimant was not limited to direct evidence or the testimony of eye witnesses but was entitled to use circumstantial evidence in

establishing that the death of the deceased arose out of his employment and resulted from causes related to his employment. The circumstantial evidence need not be established to such a degree of certainty as to exclude every reasonable conclusion other than that reached by the trial tribunal. Kier v. Burton, Okl., 385 P.2d 489; Eason Oil Company v. Kerns, Okl., 353 P.2d 471; Young v. Neely, Okl., 353 P.2d 111.

The facts in the present case are similar to those involved in Bill Gover Ford Company v. Roniger, supra, where a clerical employee due to the leaving of another employee was required to work long hours and do about twice the work she had previously done. She was tired after each day's work. She sustained a heart attack while at work. We held that the strain and tension caused by the exceptional long work hours and being required to work at new tasks unfamiliar to her was the precipitating cause of the heart attack. She therefore was entitled to receive Workmen's Compensation benefits.

In the present case the deceased was also performing new and additional duties. The evidence shows these added responsibilities caused, precipitated and aggravated an acute myocardial infarction or coronary occlusion which resulted in his death.

The finding of the State Industrial Court that death of the deceased was due to causes arising out of and in the course of his employment is sustained by reasonable competent evidence and will not be disturbed by this court on appeal. Gulf Oil Corporation v. Harris, Okl., 425 P.2d 957; Kier v. Burton, supra; Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741.

Award sustained.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in result.