BOARD OF COUNTY COMMISSIONERS of TULSA COUNTY, Oklahoma, Petitioner,

v.

Alfred F. PARKER and the State Industrial Court of Oklahoma, Respondents.

No. 43099.

Supreme Court of Oklahoma.

April 8, 1969.

S. M. Fallis, Jr., Dist. Atty., John S. Morgan, Asst. Dist. Atty., Tulsa County, Tulsa, for petitioner.

Schwoerke & Schwoerke, K. J. Schwoerke, Oklahoma City, G. T. Blankenship, Atty. Gen., for respondents.

WILLIAMS, Justice.

There is involved here for review an order of the State Industrial Court sitting en banc adopting and affirming an award of the trial judge allowing the respondent Alfred F. Parker, claimant below, total and permanent disability benefits resulting from a heart attack he alleges he sustained while working for the respondent, Board of County Commissioners of Tulsa County, Oklahoma, on March 23, 1967. Parties will be referred to as they appeared before the State Industrial Court.

Summarized the evidence is as follows:

Claimant testified that on March 23, 1967, he was operating a road grader for respondent. He was using the grader to slope the bank along the highway into the bar ditch. In the sloping process Johnson grass and persimmon sprouts would become "balled up" between the blade and moldboard of the grader making it necessary for claimant to stop the machine, climb down three steps from the cab, step on the blade of the grader and then to the ground for the purpose of removing the débris from in front of the blade. The reverse of those movements were made in his return to the grader cab. During the day he made these movements (descents and ascents) about twenty or thirty times. The sloping was harder work than when the grader was used for leveling gravel or for other such purposes. About 3:30 in the afternoon he was backing the grader and backed it over a bridge abutment. At that time he became considerably "fretted" and worked at trying to pull the grader off "high-center" to no avail.

He felt pain in his chest going down each shoulder. He reported this pain to respondent's superintendent. The superintendent said, "Well, when you get home check with your doctor and see what he thinks about it." When he started to drive home he had a funny feeling, "woozy like." Another workman drove him most of the way to the county's district garage, and still another most of the way from the garage to claimant's home. Claimant went to see Dr. R and Dr. D. His blood pressure was a little high. Dr. R gave him some

pills and told him to "take it light for the next day or two."

The next day he went back to work with the respondent's superintendent. The grader was moved off the bridge. The superintendent then had another employee drive claimant back home. He went to his family doctor, Dr. D, who had not been available the preceding day, and who in turn called Dr. F in Tulsa. Dr. F put claimant in St. Francis Hospital in Tulsa where he remained four or five days. He reported to respondent for the purpose of returning to work but respondent's superintendent directed him to report to the G–N Clinic in Tulsa for an examination regarding his heart condition. Dr. C examined him and he went through the G–N Clinic. Dr. C furnished him with a copy of a written report. He delivered the report to respondent's superintendent. The superintendent told him to take a two weeks vacation. He has not been released to return nor has he returned to work for respondent.

Claimant testified that while employed by respondent he had a heart attack in 1955 when he was treated by Dr. Fi and Dr. Fu. At that time he had sharp pains in his chest like someone stabbing him with a knife. He was off work approximately six weeks. He returned to work for respondent and worked steadily for the respondent until March 23, 1967, with the exception of three months when he was working for another employer.

He sustained an injury to his back in 1965 when he lost control of a roller. He was examined at that time by Dr. C. The injury apparently was not disabling.

Claimant submitted in evidence the written report of Dr. P who examined him on January 4, 1968. After reciting the history given by the claimant wherein he related substantially the same testimony as shown in the record here, Dr. P made a finding as follows:

"Based upon the history presented by this patient, his findings on physical ex-amination, x-ray and laboratory studies, it is my opinion that he did, on March 23, 1967, sustain an acute myocardial infarction. The myocardial infarction was caused, precipitated and aggravated by the heavy, strenuous work he was doing at the time. At the present time, after approximately ten months, he demonstrates a badly damaged, enlarged heart and is certainly totally and permanently disabled for ordinary manual labor. It would further be my opinion that his present disability was caused, precipitated and aggravated by the work he was doing at the time of the infarction on March 23, 1967."

Claimant submitted in evidence the written report of Dr. C furnished to the claimant on May 16, 1967, regarding his examination of the claimant after the date of the accident. Dr. C examined the claimant at the request of the respondent. Claimant furnished a copy of the report to respondent at the time he attempted to return to work. The report reads:

"Mr. Alfred F. Parker was examined at the Glass-Nelson Clinic, Tulsa, Oklahoma, on April 27, 1967. Mr. Parker had an episode of cerebral insufficiency on March 23, 1967. In addition, he has cardiomagaly, electrocardiographic evidence of myocardial ischemia and evidence of a previous heart attack. He is hypertensive and overweight.

"It is my impression that Mr. Parker is permanently and totally disabled for work by evidence of his recent examination and laboratory studies."

Dr. C testified as a medical witness for the respondent that he examined the claimant about December 1, 1965, and again on April 27, 1967. At the December 1, 1965, examination claimant told him about his heart attack in 1955. Claimant was overweight and he recommended that he make an effort to reduce. Claimant related that his father, mother and brothers had been bothered with heart trouble. Claimant's blood pressure was 150/90 which he (Dr. C) considered slightly high. Electrocar-

diograph showed the damage done to the heart by the 1955 attack but also continuing heart damage up to the date of the examination. Claimant expressed an awareness of his heart condition by shortness of breath and aching discomfort in both arms upon exertion. Claimant was still having difficulty with the anginal symptoms which followed his 1955 heart attack. Dr. C felt that claimant could continue with his work as foreman but should refrain from performing heavy labor.

In regard to his examination made on April 27, 1967, Dr. C stated he found no evidence of a new heart attack but from an electrocardiograph examination found additional damage done the the heart since the previous examination which he attributed to the natural course of heart disabilities but not to trauma. He states from the history related by claimant and others as to how the accident of March 23, 1967, occurred he believes that claimant sustained temporary brain damage from the spasm of an artery or actual blockage of the small vessels to the brain but showed no effects of disability from such injuries on the date of the examination. In regard to the future employment of the claimant Dr. C found:

"I felt it was quite dangerous for Mr. Parker to work around heavy equipment or other people since at any time he could have had a heart attack or another blockage of a vessel in the brain which would have again caused bizarre activities and possibly result in danger to his fellow employees."

In regard to the effect of heavy labor on the claimant Dr. C testified:

"* * * What would heavy labor be apt to do to a man, or stress or exertion, that has a heart that is damaged, and he has a history of angina?

A. It would put an extra burden on his heart.

Q. Would it possibly precipitate it into an acute condition that could even result in his death?

A. It could.

Q. All right. This is recognized as found in medicine, is it not?

A. Yes."

He stated that the exertion of the work claimant was doing at the time of the accident could have precipitated an acute heart condition. In his opinion claimant is unable to perform any type of ordinary manual labor and is "totally and permanently disabled from doing ordinary manual labor," but the doctor does not attribute this to trauma.

Claimant denies that he was at any time advised by his superiors to refrain from operating road graders or other heavy equipment. Rather, he stated that his superintendent (since deceased) furnished the one he was using for claimant and his crew to get better use of their time. Evidence was submitted of effect that there is nothing unusual about a foreman occasionally operating a road grader or other heavy equipment.

Respondent complains that its rights have been jeopardized by the failure of the claimant to file and serve written notice within thirty days after the accident occurred as required by 85 O.S.1961, § 24. We do not agree. Claimant reported the occurrence to respondent's superintendent within a few hours after experiencing his heart attack. The superintendent sent him to a doctor selected by respondent. The trial judge found that respondent "had actual knowledge of claimant's accidental personal injury, or 'incident' on the job, and no prejudice to the rights of respondent has occurred by failure of claimant to furnish the statutory 30-day written notice and such failure on the part of the claimant is excused." Such finding is supported by competent evidence, is conclusive and binding on this Court. Black, Sivalls & Bryson, Inc. v. Coley, Okl., 367 P.2d 1017; Corbus Spring Service v. Cresswell, Okl., 359 P.2d 219; Rigdon & Bruen Oil Company v. Beerman, Okl., 346 P.2d 169.

Respondent argues that the heart disability of the claimant is the natural outgrowth of the previous heart disability he had (in 1955) prior to the date of the accident. The evidence is undisputed that claimant sustained a heart attack in 1955, approximately twelve years prior to the date of the alleged accident. We have held that an accidental injury arising out of and in the course of the employment which aggravates a prior heart condition of an employee, creating a disability which did not previously exist is compensable. H. J. Jeffries Truck Line v. Grisham, Okl., 397 P.2d 637; Hefner Co. v. Lantz, Okl., 393 P.2d 845; McCoy Tree Surgery Co. v. Baty, 207 Okl. 285, 249 P.2d 409. Compensation may be allowed although claimant's heart was not in perfect condition on the date of the injury. Richards v. State Industrial Commission, 143 Okl. 29, 287 P. 69.

■ We have held in several cases that a heart disability caused or precipitated by a strain or exertion while the employee is doing his work in the usual and customary manner is compensable although nothing unusual occurred to cause the strain or exertion. The disability need not be attributable to one particular strain or strains and exertions culminating in the disability. Flint Construction Company v. Downum, Okl., 444 P.2d 200; Bill Gover Ford Co. v. Roniger, Okl., 426 P.2d 701; H. J. Jeffries Truck Line v. Grisham, supra; Safeway Stores, Inc. v. Evans, Okl., 376 P.2d 356; Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741.

■ The accidental strain or exertion need not be the sole cause of the heart disability but is sufficient if it is a direct and contributing cause of such disability. Flint Construction Company v. Downum, Okl., 444 P.2d 200; Bill Gover Ford Company v. Roniger, Okl., 426 P.2d 701; H. J. Jeffries Truck Line v. Grisham, Supra; Young v. Neely, Okl., 353 P.2d 111.

Claimant commenced working for the respondent approximately nineteen years prior to the date of the accident. With the exception of three months when he worked for another employer he worked for the respondent continuously as road worker until March 23, 1967. In 1955, he sustained a heart attack which required his absence from work for a period of about six weeks. He then returned to work for respondent and, with the exception of a few days off when he injured his back in December, 1965, and possibly three months while employed elsewhere, worked continuously until he had his heart attack on the date of the accident. He lived and worked with any disability he sustained in the heart attack of 1955 for twelve years. Suddenly on March 23, 1967, when the work he was doing caused him to be subjected to unusual strain and exertion he sustained a second disability to his heart. The evidence is undisputed that the accident occurring on March 23, 1967, caused him to be totally and permanently disabled for the performance of ordinary manual labor. He cannot return to work for the respondent. Respondent has refused to reemploy him upon advice of their doctor to the effect that the claimant is totally and permanently disabled. It appears logical that the strain to the claimant on March 23, 1967, was the direct cause or at least a contributing cause of claimant's disability.

■ Whether a heart attack suffered by a workman resulted from strain and exertion arising out of and in the course of his employment or from other causes which are unrelated thereto and disconnected therefrom, presents a question of fact for the determination of the State Industrial Court, whose finding on such issue will not be disturbed by this Court on review when based on competent evidence reasonably tending to support it. Flint Construction Company v. Downum, Okl., 444 P.2d 200; Bill Gover Ford Company v. Roniger, Okl., 426 P.2d 701; Gulf Oil Corporation v. Harris, Okl., 425 P.2d 957; Hefner Co. v. Lantz, Okl., 393 P.2d 845; Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741.

The award of the State Industrial Court is sustained by sufficient, reasonable, competent evidence both lay and medical. It correctly interprets the law. It is sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.