**KERR–McGEE CORPORATION, a corporation, (Own Risk) Petitioner,**

v.

**STATE INDUSTRIAL COURT and Virgil D. Clark, Respondents.**

**No. 44050.**

Supreme Court of Oklahoma.

Sept. 8, 1970.

Kerr, Davis, Irvine, Burbage & Foster, by Francis S. Irvine and Michael E. Krasnow, Oklahoma City, for petitioner.

Schwoerke & Schwoerke, by K. J. Schwoerke, Oklahoma City, G. T. Blankenship, Atty. Gen., for respondents.

LAVENDER, Justice.

This is an original proceeding to review an order of a trial judge of the State Industrial Court finding, among other things, that the claimant, Virgil D. Clark, sustained a fifteen per cent permanent disability to his body as a whole as the result of an accidental personal injury to both of his shoulders, on January 5, 1968, arising out of and in the course of his hazardous employment as an employee of Kerr-McGee Corporation (hereinafter called the employer), and awarding him compensation for permanent partial disability on that basis.

On January 5, 1968, claimant, who was then 61 years of age and had been working for the company and its predecessor since 1933, was working as a welder inside a steel tower at the company's plant at Cushing, Oklahoma. Fire broke out in the tower and, in order to escape, claimant pulled himself up, using both arms, through a hole in the top of the tower about two feet above his head. In doing so, he injured his back and both shoulders. A supervisor for the company was present at the time and asked him if he thought he ought to go to the doctor. Claimant said, "No, I don't believe I do. Maybe I'll feel better after a while." Apparently, he remained on the

job the rest of that work day. That same evening, claimant, on his own, went to a chiropractor of his own choosing, who gave him some adjustments.

Claimant continued working and, on February 1, 1968, the company sent him to Dr. B, who treated him from that date until some time in May of 1969. During that same period of time, the company sent him, in May of 1968, to a Dr. F for an examination, and, on July 12, 1968, and on August 30, 1968, to Dr. M for examinations, but he was given no treatment by either Dr. F or Dr. M.

Also during that same period of time, the company took him off his "routine" work, in September of 1968, and put him in a "kind of overseer job," in which he did "just a little light work." He continued working in that job until he retired, voluntarily, under the company's rules, in June of 1969. In the meantime, in about January of 1969, the company sent him to Dr. L for an examination, but he was not treated by Dr. L.

Claimant was never off work from the time of his injury on January 5, 1968, until his retirement in June of 1969. He was paid his regular wages, with all normal increases, until his retirement, and, as of the date of the hearing on his claim, January 21, 1970, had been receiving his full retirement pay under the company's rules and regulations. He made no claim for temporary total disability compensation.

On January 19, 1970 (two days before the hearing on his claim), at the request of the company, claimant was examined, for the second time, by Dr. L, mentioned above, and, for the third time, by Dr. M, mentioned above. On the same date, he was also examined, at the request of his own attorney, by Dr. G. He received no treatment on that date. The medical evidence consisted only of the medical reports of those examinations, received in evidence by stipulation, with Dr. G's medical report being introduced by the claimant, and the medical reports of Drs. L and M being introduced by the company.

In his report, Dr. L concluded with the statement that he did not believe that the claimant has any permanent disability as a result of his accident of January 5, 1968. In his report, Dr. M stated that the claimant's condition was not the result of any industrial accident, but was simply a normal process of aging, and concluded with the statement that "I feel he has no permanent partial disability to any portion of his body for the performance of ordinary manual labor due to his alleged accident of January 5, 1968."

Dr. G's medical report concluded with the following comments:

"This 62 year old man suffered wrenching injuries to the tendon attachments to each shoulder. *He continued to work, which interfered with healing, and increased the permanent disability.* It is my opinion that he has reached his maximum of recovery; that no definitive treatment, except palliation is indicated; that he will continue to have pain and limitation of the range of motion of both shoulders, and that this constitutes a percentage of permanent disability amounting to twenty (20%) percent loss of the use to the body as a whole, for the performance of manual labor; and that his disability is the result of the accidental injury suffered on 5 January 1968."

Claimant admitted, on the stand, that the company never did refuse to provide him with medical treatment, and that his failure to receive any medical treatment for his injuries (other than a chiropractic adjustment on the evening of the accident), prior to February 1, 1968, was of his own choosing.

The company presents its assignments of error under a single proposition: "The evidence introduced by claimant is insufficient to support the award of the State Industrial Court and the award of the State Industrial Court is in conflict with and in disregard of the evidence introduced in the case, because the evidence introduced indicates that the claimant did

not obtain proper medical care timely, and also that claimant continued working after receiving the injury, thereby increasing the disability, and no evidence was introduced as to what the extent of the permanent partial disability would have been if the claimant had accepted prompt medical treatment and had used ordinary care to avoid aggravating the injury and increasing the degree, if any, of permanent partial disability."

The company cites cases concerning the employer's duty to provide promptly medical, surgical, and hospital and other services and treatment, and the injured employee's correlative duty to avail himself of such reasonable remedial measures as are within his power and to use ordinary care to avoid aggravating the injury [Moran v. Oklahoma Engineering & Machine & Boiler Co. et al. (1923), 89 Okl. 185, 214 P. 913; White Oak Refining Co. et al. v. Whitehead et al. (1931), 149 Okl. 297, 298 P. 611]. And, citing the case of Walter Nashert and Sons et al. v. McCann et al. (1969), Okl., 460 P.2d 941, wherein the claimant refused any medical treatment on religious grounds, the company argues that Industrial Court's order should be vacated and the cause remanded to that court with directions to determine the extent, if any, of permanent disability this claimant would have sustained as a result of his injuries if he had exercised due care in the matter of obtaining prompt and necessary medical treatment and laying off work in order to keep the extent of his permanent disability as low as possible.

Thus, the basic question for determination by the State Industrial Commission was whether or not the claimant's permanent disability, if any, was the result of his alleged failure to act as a reasonable prudent person would have acted in similar circumstances, with respect to medical treatment and continuing to work after being injured. In this case, this question was involved in the determination of the cause, and extent, of the claimant's disability, if any.

The evidence establishes that the claimant told his supervisor, immediately after the accident, that he did not think that he needed to go to the doctor, but that, on the same evening, he did go to a doctor and was treated. There is nothing in the evidence to indicate that this doctor told the claimant, or suggested to him, that he would need further treatment for his injuries.

There is nothing in the evidence to indicate that that doctor, or Dr. B (to whom the employer sent the claimant for examination and treatment about a month after the accident and who continued to treat him until May of 1969, the month before the claimant retired), or Dr. F, to whom the employer sent him for examination in May of 1968, or Dr. M, to whom the employer sent him for examinations in July and August of 1968, or Dr. L, to whom the employer sent him for examination in January of 1969 (about five months before he retired), even suggested to him that he should lay off work so that his injuries would heal better or quicker and reduce the extent of his permanent disability from the injuries.

As we see it, the trial judge could, very well, have concluded that Dr. G's hindsight on these medical matters, exercised some two years after the claimant sustained his injuries, was better than the foresight of any of the other doctors who examined and/or treated the claimant, and that, in the circumstances, the claimant, as a layman, did not fail in his duty to exercise due care in either of these matters, so that his permanent disability was not the result of any such failure on his part.

■ As mentioned above, the trial judge found that the claimant sustained a fifteen per cent permanent disability to his body as a whole *as the result of the accidental injury involved herein,* and awarded him compensation on that basis. In workmen's compensation cases, the cause, and extent, of disability are questions of fact for determination by the State Industrial Court [Sheppard v. Western Electric Company, Inc. (1968),

Okl., 448 P.2d 463]. Findings of fact by the State Industrial Court are conclusive and binding on this court where there is any competent evidence reasonably tending to support such findings; and, in such an instance, the decision of the State Industrial Court, based upon such findings, will not be disturbed by this court on review. [In Matter of Death of Ralph Loague (Loague v. Watson & Watson et al.) (1969), Okl., 450 P.2d 492; Sheppard v. Western Electric Company, Inc., supra].

Award sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and McINERNEY, JJ., concur.