In the Matter of the Death of Aden Russell HOWEY, Lillie May Howey, Petitioner,

v.

The BABCOCK & WILCOX COMPANY, Respondent,

Travelers Insurance Company, Insurance Carrier.

No. 46145.

Supreme Court of Oklahoma.

Nov. 27, 1973.

Bert M. Grigg, Dean H. Smith, Tulsa, Larry Derryberry, Atty. Gen., Oklahoma City, for petitioner.

Sanders, McElroy & Carpenter, Jerry H. Holland, Tulsa, for respondents.

BERRY, Justice:

Lillie May Howey, hereafter claimant, filed Form 3–A as surviving wife and sole dependent, seeking award of statutory death benefits, 85 O.S.1971 § 22, by reason of death of Aden Russell Howey while engaged in covered employment.

Only claimant introduced evidence at the hearing, and the trial judge reserved ruling on respondents' demurrer to this evidence. Thereafter, [June 27, 1972] the trial judge entered an order finding deceased died as result of heart attack aggravated and precipitated by work performed in course of hazardous employment with respondent, and awarded claimant death benefits. Appeal to State Industrial Court en banc resulted in affirmance of the award and respondents perfected this proceeding for review.

■ Contentions advanced as grounds for vacating this award attack sufficiency and quality of claimant's evidence to sustain an award. Whether decedent suffered accidental injury arising in course of employment is a question of fact for State Industrial Court determination. Kerr-McGee Corp. v. State Industrial Court, Okl., 474 P.2d 411. In this posture the Supreme Court will examine the evidence only to ascertain whether the award is supported by any reasonable competent evidence. Blue Bell, Inc. v. Owens, Okl., 463 P.2d 969. Because the record is examined only for this purpose extended recitation of evidence is unnecessary.

Deceased was a boiler maker, engaged as working foreman over respondent's four man crew engaged in boiler repair, had no known heart condition, and was not ill

prior to leaving for work. On May 9, 1970, the crew reported to a power plant site to begin work repairing a boiler leak. This boiler, approximately 140 feet high and 80 feet square, contained tubes which supported the walls and top, as well as providing support for metal covered, insulated outer walls. The interior fire box accommodated approximately 30 square feet of open floor space which contained no tubes. This area was accessible through a small [8 inch] crawl space, provided by bending of vertical tubes. Temperature inside the boiler was very high, and the tubes were so hot they could only be touched momentarily with gloved hands.

Upon arrival the crew was advised as to area of the leak. About 8:00 A.M. the crew entered the boiler, using a flashlight, and then strung electric lights to aid the work. One man [Pittser] left the boiler to procure replacement for a broken light bulb, but deceased remained inside for approximately 30 minutes. Repair of the leak could not be made from inside and the crew then went outside and erected scaffolding 10–12 feet high, removed the outer covering and insulation, and prepared to weld the leak. About 9:30 A.M. deceased climbed the scaffold to speak with Pittser, climbed down and walked away out of Pittser's view. Another worker [Pullen] immediately ran back and reported deceased had fainted.

Deceased and Pullen were standing north of the boiler discussing whether water dripping from above was the other leak which was being hunted. Deceased pointed upward, then grabbed his face and fell backward, but was caught and laid on the ground by Pullen, who ran back and reported deceased had fainted.

Others of the crew descended the scaffold and went to deceased, removed his glasses and dentures and raised his shoulders, and opened his clothing to the waist in order to massage the heart while starting mouth to mouth resuscitation. A resuscitator also was applied without success.

Deceased had sweated profusely, so that both his coveralls and khakis worn underneath were wet. An ambulance removed deceased to a Claremore hospital where the admitting doctor, acting as County Medical Examiner, pronounced him dead on arrival, cause of death being listed as acute myocardial infarction. Some circumstantial evidence provided basis for inferring deceased possibly had entered the boiler a second time. Other than medical evidence mentioned hereafter, the foregoing statement discloses evidentiary matters surrounding deceased's demise.

 Three contentions advanced as grounds for vacating this order attack sufficiency and quality of the evidence to sustain an award. Cause and extent of disability resulting from accidental injury are questions of fact exclusively for determination of State Industrial Court, whose findings are conclusive and binding on appellate review. Kerr-McGee Corp. v. State Industrial Court, supra. In this posture the Supreme Court is not authorized to weigh evidence to determine preponderance thereof, but considers only whether there is any reasonable competent evidence tending to support the finding. Rains v. Ardmore Livestock Auction, Okl., 469 P.2d 243; Avco Corp. v. Swartzlander, Okl., 470 P.2d 340.

 One contention argued at length is the following verbatim quotation from Ideal Cement Co. v. State Industrial Court, Okl., 486 P.2d 712, @ 715:

"One who seeks compensation for death from a cardiac episode must establish, by competent evidence, that such condition was caused or precipitated by an accidental injury from strain or exertion and sustained in course of or arising out of employment. * * * When there is no competent medical evidence as to nature and cause of heart attack, an award made for death of an employee under Workmen's Compensation Act will be vacated. * * *"

Respondents insist the rule expressed in Flint Construction Co. v. Downum, 444 P. 2d 200, and earlier decisions, was overruled in Ideal, supra. Hence our law now requires showing injury resulted from uncommon strain or exertion attendant to the work performed before accidental injury from heart attack may be compensable. From this premise respondents review and urge failure of evidence to show unusual strain or exertion and conclude this order must be vacated.

Contrary to respondents' assertion, the rule in Downum was not overruled by our holding in Ideal, supra. Recently, in Black, Sivalls & Bryson, Inc. v. Bass, Okl., 506 P.2d 902, we reconsidered the rule involving compensability of injury sustained by heart attack without unusual strain or exertion being shown. In Bass, supra, language in the Ideal case was categorized explicitly as too general, and to be treated as encroaching upon settled law expressed in Downum, supra. Respondents' argument, premised upon lack of evidence to show unusual stress or strain, is without substantial merit.

■ Respondents' other contentions urge insufficiency of medical evidence to support this award. The only medical evidence introduced was deposition testimony of the examining physician who pronounced deceased dead on arrival. This deposition was taken with respondents' agreement, and stipulation that objections made at that time would be subject to the trial judge's rulings when offered into evidence. And, this deposition was taken prior to any evidence from other witnesses and upon showing questions were prepounded to be upon basis of testimony to be given by other witnesses when this claim was heard.

Admittedly this physician's testimony was based upon history and facts obtained from other employees and the ambulance driver. During course of the deposition respondents consistently objected to questions calling for the doctor's opinion, upon grounds any answer would be based upon hearsay received by conversation with others, would assume facts not in evidence, or for which no proper predicate had been laid.

One hypothetical question posed included a statement that deceased had been working in the boiler where temperature exceeded 105 degrees. No evidence at the hearing established this fact. Force of this error of improperly assumed fact was negated, however, by the doctor's response to the effect that other circumstances which precipitated deceased's heart attack would not vary. With this exception, other facts assumed as basis for hypothetical questions, which elicited medical testimony as to cause of death, were established by testimony of lay witnesses present at the scene and competent to testify from their own knowledge as to matters involved.

Considerable analysis of the evidence is presented in an effort to support respondents' claim this medical testimony was based upon lack of facts, speculation and conjecture, and requires the medical evidence to be treated as having no probative value. Recognition of argument that such testimony is pure hearsay and of no probative value would destroy possibility of medical proof in every case where an injured workman dies, and effectively emasculate established rules governing pattern and quantum of proof announced in Berryhill v. Prudential Premium Co. of Okl., Okl., 394 P.2d 520; H. J. Jeffries Truck Line v. Grisham, Okl., 397 P.2d 637; C. T. Hughes Const. Co. v. Phillips, Okl., 401 P. 2d 498.

The trial court properly could weigh the medical testimony, and was at liberty to accept or reject all or any part of this evidence. We do not find fatal variance between the facts assumed as basis for the medical opinion stated, and the facts ultimately established by evidence introduced before the State Industrial Court. That

court determined deceased suffered accidental injury in the course of employment. This was determination of a question of fact exclusively within jurisdiction of that court. This determination is supported by reasonable competent evidence.

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, LAVENDER, BARNES and SIMMS, JJ., concur.

HODGES, J., dissents.