**PEABODY GALION CORPORATION,
and CNA/Insurance, Petitioners,**

v.

**Troy D. WORKMAN, Respondent.**

**No. 54960.**

Supreme Court of Oklahoma.

March 23, 1982.

John R. Couch, Stewart M. Moss, Barbara Tracy, Gary Neal Rogers, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for petitioners.

Richard A. Bell, Norman, for respondent.

OPALA, Justice:

The case presents four issues: [1] Was the evaluation of a noise-induced hearing loss exempted from the statutory requirement that the rating physician assess per-

manent impairment by substantially complying with the American Medical Association's "Guides to the Evaluation of Permanent Impairment" [AMA Guides]? [2] Does the expert evaluation of hearing loss lack probative value because it was based on the allegedly outmoded "whisper" test? [3] Was the noise-induced hearing loss an accidental injury to a scheduled member rather than an occupational disease? and [4] Was the trial tribunal required to find loss of earning power or ability to work as a precondition to awarding compensation for the impairment of a scheduled member?

We answer the first and third questions in the affirmative and the second and fourth in the negative.

The claimant, a welder, has been in the Peabody Galion Corporation's [employer] employ for approximately 5 years. His workplace was a large, open structure in which various departments were housed in proximity one to the other. His welding assignments took him to different locations within the plant where he was subjected to a broad range of noises. Among the identified noise sources were diesel motors, grinders, chipping hammers, breaks and punch presses. Aside from these, there were also noises from manual hammering within metal confinement and the blowing of a large air whistle close to the work station. No plant personnel were provided with, nor required to wear, earplugs.

The claimant initially noticed a hearing problem around November 1978. It was then that a constant ringing sensation in his ears came to manifest itself. He found himself continually increasing the volume on the television set and asking others to repeat comments directed to him. After discussing the problem with other employees, the claimant sought the advice of a doctor. In April 1979 his condition came to be diagnosed as a noise-induced hearing loss. During the same month he brought a compensation claim.

At the hearing, Dr. D, the employer's medical expert, testified that upon examining the claimant, he ordered several audiometric tests and then applied the AMA standards to the results of the tests to arrive at an evaluation of the claimant's condition. He explained that the AMA standards were not adjusted for age—a factor which he felt was highly important. As a result, he combined the percentages indicated by the AMA standards with aging tables published by the National Institute for Occupational Safety and Health to reach a final evaluation of 6.75 per cent loss of hearing to the left ear and 16 per cent loss of hearing to the right ear—for a binaural average of 8.3 per cent disability. Dr. D noted that when tested for spoken-word comprehension, the claimant required volumes significantly higher than the normal listener. On cross-examination he said the AMA evaluation procedure did not cover the full range of the claimant's hearing loss.

Dr. M, the claimant's physician, testified there was a hearing loss of 30 per cent to the right ear and 20 per cent to the left ear—for a combined hearing loss of 45 per cent. In evaluating the claimant's disability, he deviated from the AMA Guides and used a spoken-word procedure [whisper test] to determine the claimant's ability to hear spoken language under everyday conditions. His decision not to use the AMA Guides resulted from his belief that the AMA Guides did not correctly reveal the amount of disability in a man of the claimant's age. While before writing his report Dr. M reviewed the results of audiometric testing run by the employer's physician, he did not rate the claimant's disability according to the AMA standards.

The trial tribunal found that claimant's loss of hearing from continued exposure to loud noise constituted an occupational disease. He was awarded a 30 per cent loss of hearing to the right ear and 18 per cent loss of hearing to the left ear—for a binaural hearing loss of 25 per cent permanent partial disability. The award was affirmed by the appellate panel of the Workers' Compensation Court. The employer brings this proceeding for review.

## I.

■ The employer contends that 85 O.S. Supp.1977 § 3(11)[1] and Workers' Compensation Court Rule 23[2] require the use of the AMA Guides as the basis for evaluation of *all injuries* except for total loss of use or amputation of a member listed in § 22(3). Under the statutory construction urged by the employer, a physician's opinion as to the extent of *permanent partial impairment* of a member covered by § 22(3) is without probative value when not based on the AMA Guides. We do not agree. Such a reading would unduly restrict the clear meaning of the statute.

The question posed was recently addressed in *B. F. Goodrich v. Hilton*[3] where we held the measuring standards of the AMA Guides do not apply to a § 22(3) scheduled member loss. In *Goodrich* we said that § 3(11) clearly and unambiguously reveals that permanent partial disability to a scheduled member under § 22(3) is excepted from the statutory provision by which AMA Guides are made the basis for testimony and conclusions concerning permanent impairment.

## II.

■ The employer next contends that, even if we allow the exception to using the AMA Guides, the claimant's medical evidence is without probative value because it is based on the spoken word or "whisper" test. The medical evidence so obtained, the employer argues, is speculative and without

a scientific basis so as to require vacation of the award.

The claimant's physician, after reviewing the AMA Guides and concluding they would not correctly mirror the limits of the claimant's hearing disability, chose an alternative evaluation procedure known as the "whisper" test. This procedure relies on responses to vocalization at various degrees of loudness. The employer urges us to declare the results of this procedure inadmissible and confine the evidence in the case to the evaluation by the employer's expert—based on electronic audiometric testing—even though such testing admittedly did not reflect the full range of the claimant's hearing impairment.

The "whisper" test was in wide use before the availability of electronic audiometric testing. The record does not show that the technique of whisper testing is either discredited or discarded by the present state of the art or is so out-of-date as to constitute a scientifically inaccurate or unreliable method. To the contrary, the record reveals a medically recognized need and desirability for ascertaining a person's ability to hear and comprehend ordinary spoken language.

In cases in which evaluation of disability depends on expert medical opinion, an award must be supported by competent evidence.[4] The claimant's medical expert, while not a specialist, was qualified under 85 O.S.Supp.1977 § 17 to testify as to his

---

1. The terms of 85 O.S.Supp.1977 § 3(11) provide in pertinent part: " * * * Any examining physician shall evaluate impairment in substantial accordance with such guides to the evaluation of permanent impairment as have been officially approved by a majority of the Workers' Compensation Court. These guides may include, but shall not be limited to, the 'Guides to the Evaluation of Permanent Impairment' published in 1971 by the American Medical Association. The Court shall be empowered to add, delete or revise its guides as its majority sees fit. * * * "
Citation to statutory material in the text identifies section numbers in Title 85.

2. The terms of Rule 23 of the Workers' Compensation Court provide: "The court adopts the 'Guides to the Evaluation of Permanent

Impairment' as published in 1977 by the American Medical Association, for use by examining physicians as a guideline in their evaluations of all permanent impairments with the exception of loss of use or amputations of scheduled members. In case of any conflict between the 'Guides' and the provisions of 85 O.S.Supp. 1977 § 22, the latter shall control and prevail. In any case where the examining physician deviates from the 'Guides' the basis for the deviation shall be stated with full medical explanation."

3. Okl., 634 P.2d 1308, 1310 [1981].

4. *Haynes v. Pryor High School*, Okl., 566 P.2d 852, 854 [1977].

examination and conclusions.[5] His testimony may not be disregarded merely because it is at variance with that of a specialist.[6] Neither may an opinion be deemed inadmissible or lacking in probative force[7] just because a test believed to be more precise is associated with another method.[8] The trial tribunal is the sole judge of the credibility of witnesses and of the weight and value to be accorded to the testimony adduced.[9] Our task is limited to ascertaining whether the award rests on competent evidence.[10]

The record reveals the award rests on competent evidence. We are powerless to disturb it.

### III.

■ The employer asserts error in characterizing the claimant's disability as an occupational disease instead of accidental injury. The claimant argues that it was the legislative intent to include loss of hearing within the broadened definition of occupational disease when the statute was amended in 1977. 85 O.S.Supp.1977 § 3(10).

Before the 1977 revision of § 3(10), the term "occupational disease" was narrowly construed. It was limited to diseases listed or described in the statute.[11] Any pathology not included in the enumerated disease groups or one which could not be termed to result from an accidental injury was deemed not to be compensable. Accidental injury was harm capable of being traced to a definite event occurring at an ascertainable date or time. The date of an occupational disease could not be so fixed.[12] It soon became apparent that this dichotomy could, and often did, frustrate the intent of the workers' compensation law. A number of job-related injuries did not fit into either category. A trend developed which made compensable, as included within the class of accidental injuries, conditions from a series of micro-traumatic episodes that occurred over an indefinite period of time and ultimately culminated in a manifestation of pathology.[13] Occupational diseases remained bound to the conditions listed in the statute. The 1977 revisions abandon the enumeration approach. They permit the occupational disease category to embrace "only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease".[14]

The fundamental purpose in statutory interpretation is to ascertain the intent of the

---

5. Competent medical testimony under § 17 is an evaluation by a physician within the meaning of § 14. Under § 14 the term "physician" means "any person licensed in Oklahoma as a Medical Doctor, Chiropractor, Chiropodist, Dentist, Osteopathic Physician or Optometrist".

6. *City of Oklahoma v. Lindsey*, Okl., 549 P.2d 81, 83 [1976]; *Drinkwater v. Orkin Exterminating Co.*, Okl., 361 P.2d 834, 835 [1961].

7. *According probative value* to the evidence is a process of assessing proper weight and value and hence one within the exclusive province of the fact trier. When *absence of probative value* is asserted on review, a pure question of law is presented. *Bergstrom Painting Co. v. Pruett*, 205 Okl. 291, 237 P.2d 453, 454 [1951]; *Sparks v. General Mills, Inc.*, Okl., 262 P.2d 155 [1953]; *Adams v. Reed Roller Bit Company*, Okl., 335 P.2d 1080, 1081 [1959]; *Farmers Cooperative Association v. Madden*, 356 P.2d 741, 745 [1960].

8. *Vaughn & Rush v. Stump*, 156 Okl. 125, 9 P.2d 764, 765 [1932]; *Goombi v. Trent*, Okl., 531 P.2d 1363, 1366 [1975].

9. *Department of Public Safety v. Jones*, Okl., 578 P.2d 1197, 1199 [1978]; *Goombi v. Trent*, supra note 8.

10. *City of Oklahoma v. Lindsey*, supra note 6; *Howey v. Babcock & Wilcox Company*, Okl., 516 P.2d 821, 823 [1973]; *Vaughn & Rush v. Stump*, supra note 8.

11. 85 O.S.1971 § 3(16) [now replaced by § 3(10)].

12. *Johnson Oil Refining Co. v. Guthrie*, 167 Okl. 83, 27 P.2d 814, 815 [1933]; *Esmark/Vickers Petroleum v. McBride*, Okl., 570 P.2d 951, 952-953 [1977].

13. *Macklanburg-Duncan Co. v. Edward*, Okl., 311 P.2d 250, 253 [1957]; *Munsingwear Inc. v. Tullis*, Okl., 557 P.2d 899, 903 [1976].

14. 85 O.S.Supp.1977 § 3(10).

legislature.[15] When possible, different provisions must be construed together to effect a harmonious whole.[16] There is no indication in the 1977 amendments that the purpose of the revised occupational disease definition was to abolish the distinction between the concepts of occupational disease and accidental injury. The expanded scope of occupational disease was doubtless intended to complement the accidental-injury concept with a view to making all job-related pathology compensable without regard to whether it arose from a systemic reaction or from some external cause.[17]

The trial tribunal classified the claimant's loss-of-hearing disability as an occupational disease which resulted from continued exposure to loud noises. Implicit in its award is a finding that a series of successive microtraumatic on-the-job events did in fact occur in the manner that unfolded itself from the testimony and that these harmful events did ultimately produce the disability for which compensation was claimed.

The claimant's injury was the unexpected result of certain extrinsic conditions, as distinguished from some systemic reaction of internal origin which is the customary or natural result of an occupation or industry. The impairment to the claimant's hearing was not shown to be characteristic of, or peculiar to, the welding trade so as to bring it exclusively within the definition of an occupational disease. We have long recognized that hearing loss resulting from prolonged exposure to loud or concussive noise is an accidental injury.[18] The statutory expansion of the occupational disease category affords no legal basis, in this case, for changing the applicable concept.

In mislabeling the hearing disability as a disease, the trial tribunal made an incorrect choice between two alternatives in a case of first impression. The legal predicate used as a basis for the award—the occupational disease—does not constitute an error in the fact finding process but a mischaracterization of the legal foundation for the award. This error does not require that we vacate the award. It may be treated as one of law which we are not powerless to correct on review.[19] Moreover, the mistaken treatment of claimant's condition would not change the amount of the award. The rate of compensation—fixed at the 1979 levels—would be the same under either classification.[20] In occupational disease cases the determinative date in ascertaining a disability—and for establishing the applicable rate of compensation—is the date of last injurious exposure, while in cumulative-effect-of-trauma cases, it is the date the manifested condition first becomes known or should be known as job-related.[21] These two dates are the same in the instant case.

The medical diagnosis of the cumulative effect of the harm-dealing noise was made in April 1979. April would also be considered the date of his last exposure according to the claim for compensation on file.

**15.** *Oklahoma Alcoholic Beverage Control Board v. Central Liquor Company*, Okl., 421 P.2d 244, 248 [1966].

**16.** *Johnson v. Ward*, Okl., 541 P.2d 182, 186 [1975].

**17.** The definition of "injury and personal injury" in the Act includes both accidental injury and occupational disease. 85 O.S.Supp.1977 § 3(10).

**18.** *Esmark/Vickers Petroleum v. McBride*, supra note 12; *Indian Territory Illuminating Oil Co. v. Severe*, 156 Okl. 246, 10 P.2d 681, 682 [1932]; see also: *City & County of Denver v. Moore*, 31 Colo.App. 310, 504 P.2d 367, 369 [1972]; *Winkelman v. Boeing Airplane Company*, 166 Kan. 503, 203 P.2d 171, 173 [1949].

**19.** The trial tribunal's finding of occupational disease resulted from an incorrect choice of the legal predicate used. That choice is correctable on review because we are not powerless to make the findings conformable to the applicable law. *Oklahoma Pipe Line Co. v. Putnam*, 162 Okl. 52, 18 P.2d 1095, 1097 [1933].

**20.** A lower weekly rate of $60 was in effect in 1978, the year in which the effects of claimant's injuries were first manifested, although undiagnosed. The rate was increased to $70 in 1979. 85 O.S.Supp.1977 § 22(6).

**21.** *Johnson Oil Refining Co. v. Guthrie*, supra note 12; *Esmark/Vickers Petroleum v. McBride*, supra note 12.

The amount of the award would not be different under either classification.[22] We hence find no error warranting vacation of the award.

## IV.

The employer's last assignment of error is that the Workers' Compensation Court could not award compensation absent a showing of loss of earning power or loss of ability to work.

This question has been thoroughly explored in discussing the method of compensating injuries to § 22 scheduled members. We have consistently held that compensation for accidental loss of function in a scheduled member must be paid without regard to an impairment of claimant's earning power.[23] Neither is loss of time from work a criterion to be considered in awarding compensation.[24] There was no error in awarding compensation on the sole basis of a hearing loss and without regard to its effect on earning power or ability to work.

Award sustained as modified.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN, HARGRAVE and WILSON, JJ., concur.

---

22. The award was based on a maximum compensation period of 300 weeks. The claimant's 25% disability resulted in an award of 75 weeks' compensation. 85 O.S.Supp.1977 § 22(3).

23. *Winona Oil Co. v. Smithson*, 87 Okl. 226, 209 P. 398, 400 [1922].

24. *Nuway Laundry Co. v. Trice*, 182 Okl. 518, 78 P.2d 706, 707 [1938]; *Manhattan-Long Construction Company v. Breedlove*, 192 Okl. 656, 138 P.2d 827, 829 [1943].