**BALL–INCON GLASS PACKAGING,**
and the Travelers Insurance Co.,
**Petitioners,**

v.

**Donna J. TABER, Kerr Glass, CNA Insurance and the Workers' Compensation Court, Respondents.**

**No. 83329.**

Court of Appeals of Oklahoma,
Division No. 3.

Sept. 6, 1994.

Certiorari Denied Nov. 17, 1994.

Pat A. Padgett, Whitman, Layman, Mac-Kenzie and Padgett, Tulsa, for petitioners.

Matthew A. Riggin, and Kathryn Burgy, Legal Intern, Frasier & Frasier, Tulsa, for respondent Donna Taber.

Ronald E. Hignight, and James J. Robertson, Legal Intern, McGivern, Scott, Gilliard, Curthoys & Robinson, Tulsa, for respondents Kerr Glass and CNA Ins.

## OPINION

ADAMS, Judge:

The pivotal issue presented in this review proceeding is the application of the definition of an "occupational disease" under our Workers' Compensation Act. On the facts revealed by the evidence, the trial court concluded Donna Taber suffered from an occupational disease attributable to her employment by both Kerr Glass and Ball–Incon Glass Packaging. Applying the "last hazardous exposure" rule required by 85 O.S.1991 § 11(4), the trial court placed all the liability for Taber's benefits on the last employer, Ball–Incon, and its insurance carrier.

Ball–Incon's quest for relief is based on its contention that any of Taber's employment-related problems stem from cumulative trauma rather than an occupational disease. According to Ball–Incon, if the proper distinction between impairment caused by an occupational disease and that caused by cumulative trauma is recognized, the trial court's order is not supported by any competent evidence. Ball–Incon argues we should set the trial court's order aside and remand for an apportionment of liability between Kerr Glass and Ball–Incon.

Taber was employed by Kerr Glass in its plant for almost seventeen years. On February 28, 1992, Ball–Incon became the owner of the plant and employed Taber from that date until she was laid off on December 21, 1992.

Taber testified she first noticed problems with breathing while she was still employed by Kerr Glass.

According to all the medical evidence, Taber suffers from chronic obstructive pulmonary disease. All of the doctors agreed this disease was caused, at least in part, by Taber's history of smoking. Both employers' doctors testified this smoking-induced condition was not aggravated by any working conditions. Taber's medical expert said her disease was caused in part by the fumes, dust particulates and other air pollutants present in the air at the plant.

In drawing a distinction between an "occupational disease" and a "cumulative trauma", Ball–Incon argues we should be guided primarily by two cases which discussed the differences. We agree.

In the first, *Peabody Galion Corporation v. Workman*, 643 P.2d 312 (Okla.1982), the Court concluded that the claimant's hearing loss resulted from cumulative trauma and was not an occupational disease. The Court noted that his injury "was the unexpected result of certain extrinsic conditions, as distinguished from some systemic reaction of internal origin which is the customary or natural result of an occupation or industry." 643 P.2d at 316.

As we interpret *Peabody*, an occupational disease must be based, at least in part, on some systemic reaction by the body to something in the work environment which is introduced into the body. Hearing loss, which results from the effects of external sound in the environment, does not meet that test. Similarly, other types of cumulative trauma, such as the effects on bones, joints and muscles from repetitive movement, would likely not be treated as occupational diseases.

However, not all systemic reactions resulting from something in the environment being introduced into the body are treated as occupational diseases. In the second case cited by Ball–Incon, *Alimenta, U.S.A. v. Sawyers*, 654 P.2d 660, 662 (Okla.App.1982), Division 2 of this Court held that an occupational disease "involves disability, the onset of which is gradual and unheralded by any identifiable occurrence." The Court held amoebic dysen-

tery, which was contracted on an identifiable date, was not an occupational disease but an accidental injury. Therefore an occupational disease must also be distinguished by a gradual onset and not be tied to any specific identifiable occurrence.

Similarly, in *Wilson Foods Corporation v. Porter*, 612 P.2d 261 (Okla.1980), and *City of Nichols Hills v. Hill*, 534 P.2d 931 (Okla. 1975), the Court held that brucellosis and histoplasmosis respectively, diseases which resulted from organisms in the work environment which were introduced into the claimant's body at a definite time, were accidental injuries and not occupational diseases. We can not apply one distinguishing characteristic to the exclusion of the other. If we apply only *Alimenta*, every cumulative trauma is an occupational disease, contrary to the holding in *Peabody*. If we apply only *Peabody*, then amoebic dysentery, brucellosis and histoplasmosis are all occupational diseases because all involve internal systemic reactions, a result at odds with *Alimenta, Porter, and Hill.*

■ We conclude, then, that an occupational disease, as distinguished from a cumulative trauma, must not only gradually develop as a result of some condition "characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease," 85 O.S.1991 § 3(10), but must also result from an systemic reaction to something in the work environment which is introduced into the body. Applying that definition here, we must conclude the trial court's order is supported by competent evidence.

■ The evidence supports the conclusion that the presence of dust particulates and fumes were characteristic of the work performed by Taber. Her medical evidence, if believed, established that her chronic pulmonary obstructive disease was caused, at least in part, by her body's reaction to the inhalation of those fumes and dust particulates. Based on this evidence, the trial court could find she suffered from an occupational disease, and we are not free to set that decision aside. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okla.1984).

Because the trial court's decision that Taber's impairment resulted from an occupational disease is supported by competent evidence, we must also conclude that the trial court did not err in applying 85 O.S.1991 § 11(4) and requiring Ball–Incon to bear all of the liability for Taber's benefits. We need not consider Ball–Incon's other arguments which are based on the premise that Taber had a cumulative trauma injury rather than an occupational disease. The order of the trial court is sustained.

SUSTAINED.

GARRETT, V.C.J., and HUNTER, J., concur.